### R. M. COLLIER VS. THE TERRITORY OF OKLAHOMA.

1. CRIMINAL ACTIONS — *Justice Court — Jurisdiction —* Justices of the peace in this territory have no jurisdiction to try and determine actions of misdemeanor, except in cases where justices of the peace are specifically given jurisdiction of the offense; and this jurisdiction not having been specifically given, a justice of the peace has no jurisdiction to try and determine a cause arising under §§ 1, 13 and 14 of art. 54, ch. 25, of the Oklahoma Statutes of 1893.

2. CRIMINAL ACTIONS — *Probate Court — Jurisdiction —* Probate courts have no jurisdiction to try and determine criminal actions upon complaint and without information, except in those cases where such jurisdiction is specifically given to justices of the peace.

3. CRIMINAL ACTIONS — *Trial by Jury of Six Men in Justices' Court Lawful —* A law of the legislature of this territory which provides that cases which the justice court has power to hear and determine may be tried before a jury of six men, and where it gives the defendant the right of appeal to the district court where he may be tried by a jury of twelve men, is not unconstitutional.

*Error from the Probate Court of Pottawatomie County.*

*C. J. Wrightsman, Keaton & Turner* and *C. R. Reddick,* for appellant.

*C. A. Galbraith, Attorney General,* and *E. B. Mundy, County Attorney,* for appellee.

The opinion of the court was delivered by

BIERER, J.: This is an appeal from a judgment of the probate court of Pottawatomie county, Oklahoma Territory, rendered against the defendant, adjudging him guilty of a misdemeanor and sentencing him to pay a fine of five dollars and costs, and be committed to the county jail until such fine and costs are paid, upon a trial had upon a complaint filed in said court, which complaint is in words and figures as follows, to-wit :

"Territory of Oklahoma, County of Pottawatomie : ·

"Before me, J. H. Daugherty, probate judge in and for said county, personally appeared H. G. Beard, who being duly sworn, on oath, says : That heretofore, on the 11th day of May, A. D., 1893, at and in said county, one R. M. Collier, did unlawfully, wrongfully, wilfully and maliciously commit the crime of trespass by then and there cutting down and destroying timber, to-wit : trees standing and growing upon the lands of Etta B. Beard, and by then and there maliciously severing from said land and injuring a post and wire fence attached thereto, all of which such said trespassing was done as aforesaid without the consent of the owner of said land and other property thereto attached; said land being a certain lot in the town of Shawnee, in said county of Pottawatomie.

"Contrary to law and against the peace and dignity of the Territory of Oklahoma.        H. G. BEARD.

"Sworn to and subscribed before me this 11th day of May, A. D. 1893.        J. H. DAUGHERTY,
                                        "Probate Judge."

The action was prosecuted upon this complaint before a jury of six men, without any information having been filed by the county attorney.

A motion is made to dismiss the appeal here, the principal grounds of which are that no notice of appeal was given and that the record was not signed and filed in the court below, as required by law. Pending this motion leave to amend and per-

fect the record was asked, which leave was granted, and the amendments made now show that notice of the appeal was served on the county attorney and upon the probate judge as required by law, and that the record was properly served upon the county attorney and signed by the probate judge and filed in the court below, as provided for in cases of appeal, and the motion to dismiss the appeal is therefore overruled.

Two questions of law are properly presented by the record in this case to the court for its determination:

1. Did the probate court have jurisdiction to try and determine this cause 'upon the complaint filed, without an information filed by the county attorney.

2. Was the jury by which the defendant was tried a legal jury, it being composed, over the objection of the defendant, of six instead of twelve jurors. as provided for by the justices' procedure acts, in force in this territory at the time this case was tried.

These are the two questions that are the basis of the errors assigned by the appellant, and he contends that both of these questions should be answered in the negative.

Under the complaint in this case, as above given, the defendant must have been prosecuted for a violation of one of the three following provisions of the Statutes of Oklahoma of 1893, to-wit:

"Sec. 1. (art. 54, ch. 25, p 516): Every person who maliciously injures, defaces or destroys any real or personal property not his own, in cases other than such as are specified in the following sections, is guilty of a misdemeanor, and in addition to the punishment prescribed therefor, he is liable in treble damages for the injury done, to be recovered in a civil action by the owner of such property or public officer having charge thereof."

"Sec. 13. Every person is guilty of a misdemeanor who wilfully commits any trespass by either: First,

cutting down or destroying any kind of wood or tim-
ber, standing or growing upon the lands of another;
or, driving or riding through, into, or across any culti-
vated hedge or tree row, or any grove of ornamental
trees or orchard of fruit trees growing upon the land
of another, or in any other manner injuring the same."
*   *   *

"Sec. 14. Every person who shall wantonly or mali-
ciously cut, dig up, or injure any timber set out,
planted, cultivated, or growing naturally, or who
shall wantonly or maliciously open, let down, throw
down, or prostrate any fence, gate, or bars, belonging
to any enclosure of any description of cultivated and
growing timber, or tears down or opens any such
fence, gate, or bars, shall be deemed guilty of a mis-
demeanor, and upon conviction thereof, shall be pun-
ished by imprisonment in the county jail not exceeding
thirty days, or by fine not exceeding one hundred dol-
lars, or by.both such fine and imprisonment, and shall
be liable in damages to the party injured."

This prosecution was manifestly attempted to be had
under one or the other of these sections of our stat-
utes, for there appear to be none other of which the
alleged acts were a violation.

It will be seen that, under §§ 1 and 13, the acts pro-
hibited are constituted a misdemeanor, without any
punishment being specifically designated in these sec-
tions therefor, and, that, under § 14, a punishment is
provided, which is not more than one hundred dollars
fine, or imprisonment in the county jail not exceeding
thirty days, one or both, at the discretion of the
court.

A part of § 14, of art. 1, ch. 25, p. 423, Statutes of
Oklahoma, 1893, provides:

"Sec. 14. Except in cases where a different punish-
ment is prescribed by this code, or by some existing
provisions of law, every offense declared to be a mis-
demeanor is punishable by imprisonment in the county
jail not exceeding one year, or by a fine not exceeding
five hundred dollars, or both such fine and imprison-
ment." *   *   *

It is manifest then, that under whichever of these three sections, 1, 13 or 14, of art. 54, ch. 25, this prosecution was intended by the territory to be had, the offense was a misdemeanor, and the punishment therefore might be one hundred dollars fine and thirty days imprisonment in the county jail. It might be this by the last of the three sections and could exceed that under the first two.

Has the probate court jurisdiction to try and determine such a misdemeanor upon complaint made by any person, without an information filed by the county attorney?

Section 7, art. 15, ch. 18, p. 365, Statutes of Oklahoma, 1893, provides:

"Sec. 7.   All criminal actions prosecuted in the probate court shall be brought in the same manner as similar actions in the justices' courts; or shall be upon information of the county attorney based upon a sworn complaint and shall be under his direction and control."   *   *   *

It will be seen that by this part of § 7, referred to, the probate court has jurisdiction of actions prosecuted in two forms or modes:   The prosecution may be upon complaint in the same or similar manner as actions are prosecuted in the justices' courts, or it may be upon information of the county attorney.

Under this section the probate courts having been given jurisdiction over prosecutions of actions in the manner in which the same or similar actions are prosecuted in justice courts, then in determining the question in issue it is necessary to determine what actions may be tried and determined upon complaint in justices' courts, and if justices of the peace are given power to hear and determine a cause like the one in issue upon complaint without the intervention of the county attorney by information, then the probate court had jurisdiction to try and determine this

action; and if the justices' courts had not jurisdiction to try and determine such cause, then the probate court had none in this case.

This statute has been ratified by act of congress and gives to probate courts in this respect the same jurisdiction which is granted by law to justices' courts to try cases upon complaint of any party.

By § 9 of the Organic Act (see Statutes of Oklahoma, 1893, p. 42), the judicial power of this territory is vested in the supreme court, district courts, probate courts and justices of the peace; and the jurisdiction of these several courts, including that of justice of the peace, is as limited by law, excepting that justices of the peace would not have jurisdiction of any matter where the title or boundaries of land may be in dispute or where the debt or sum claimed exceeds one hundred dollars.

This Organic Act left the jurisdiction of justices of the peace within this territory to be determined by the legislature, except that the legislature might not give jurisdiction to the justices' courts to hear and determine certain actions which come within the prohibitory part of this § 9 of the Organic Act. The only other reference in the Organic Act to the jurisdiction of justices of the peace, so far as it may be claimed to affect this cause, is the following language contained in § 11 of said act:

"The supreme and district courts of said territory shall have the same power to enforce the laws of the state of Nebraska hereby extended to and put in force in said territory as courts of like jurisdiction have in said state; but county courts and justices of the peace shall have and exercise the jurisdiction which is authorized by said laws of Nebraska. Provided, that the jurisdiction of justices of the peace in said territory shall not exceed the sum of one hundred dollars."

And under the laws of Nebraska, which were put in

29

force by the Organic Act, justices of the peace, who were magistrates under such laws of Nebraska, were given jurisdiction concurrent with the district court, "in all cases of misdemeanor in which the fine cannot exceed one hundred dollars, and the imprisonment cannot exceed three months, except as otherwise provided by law." (See § 314, ch. 29, p. 1060, laws of Nebraska, 1889.)

And it may be contended that under this provision of the Nebraska statutes and of our Organic Act justices of the peace are given the jurisdiction which is sought to be exercised by the probate court in this case. This, however, does not necessarily follow, for the reason that by this same § 11, of the Organic Act, the statutes of Nebraska, which were put in force in this territory and which include the provision of the criminal code referred to, were "extended to and put in force in the Territory of Oklahoma until after the adjournment of the first session of the legislative assembly of said territory." And this provision of the Organic Act giving the supreme and district and probate or county and justices' courts power to enforce those laws of Nebraska were not intended to be an extension of the jurisdiction of those courts, and to fix the jurisdiction of justices of the peace courts for all time to come in this territory, but were only intended as a power to enforce the laws of the state of Nebraska as "extended to and put in force in said territory" and of course whenever the laws of Nebraska ceased to operate in this territory, then the specific jurisdiction which was given by the Organic Act in accordance with, and to the extent of, and to be determined by, the laws of the state of Nebraska, would cease when those laws ceased to operate, and the jurisdictions and procedure of justices' courts after the laws of Nebraska ceased to operate, would have to be determined by other pro-

visions of the Organic Act and the laws made by the legislative assembly of the Territory of Oklahoma, in accordance therewith; and as by the express provisions of the Organic Act these laws of the state of Nebraska would cease to operate on the adjournment of the first session of the legislative assembly of this territory, and as the first session of the legislative assembly adjourned on the 24th day of December, 1890, the jurisdiction of the justices' courts, so far as the same relates to this cause, must be determined by the provisions of our statutes subsequently in force.

This action was begun and tried in the probate court in May, 1893, and the general provisions of our statutes, at that time in force, relating to the jurisdiction of justices of the peace in criminal cases, were the following:

Section 3, art. 1, ch. 71, laws of Oklahoma, 1890, p. 934:

"Sec. 3. These courts shall have criminal jurisdiction to try and determine all cases of misdemeanor committed within their respective counties, not indictable, where the punishment is a fine not exceeding one hundred dollars or imprisonment in the county jail for a period not exceeding thirty days, or both such fine and imprisonment. And as to all public offenses which are indictable, they have the power of committing magistrate."

Section 5, art. 2, ch. 68, laws of Oklahoma, 1893, p. 931:

"Sec. 5. Justices of the peace shall have power and jurisdiction throughout their respective counties, as follows:

"First. As committing magistrates, under the provisions of this chapter as provided in the chapter in relation to criminal procedure before justices; and,

"Second. To exercise such lawful jurisdiction, to try and determine petit misdemeanors, not indictable as by the organic law, and said justices, procedure, or,

other laws, is now, or may hereafter, be conferred upon them."

Section 7, art, 1, ch. 68, laws of Oklahoma, 1893, p. 929:

"Sec. 7. Every public offense must be prosecuted by indictment, except: * * *

"Third. Offenses tried in justices' and police courts in cases concerning which lawful jurisdiction, without the intervention of a grand jury, is or may be conferred upon said courts."

It was manifestly the intention of the legislature, as expressed in these three sections of the statute, that the jurisdiction of justices of the peace in criminal matters, where the offenses were made indictable under the statute, should be that of a committing magistrate, and that justices of the peace should have no jurisdiction to try and determine offenses that were indictable.

The intention of the legislature that justices of the peace should not have original jurisdiction to try and determine indictable offenses could not be more plainly expressed than it is by the language of these three sections. They all exclude the idea that justices of the peace may try and determine such cases as are indictable. Two of them express, however, a purpose on the part of the legislature to give to justices of the peace jurisdiction to try and determine such cases as justices of the peace are by some law of the territory given specific jurisdiction to hear and determine without indictment. Now, what offenses under the criminal code are indictable?

Section 3, of art. 2, ch. 68, Code of Criminal Procedure, of 1893, provides:

"Sec. 3. The district court has jurisdiction: First. To inquire, by the intervention of a grand jury, of. all public offenses committed or triable in the county or subdivision for which the court may be held."

It will be seen from this section, which is a part of the same criminal code as said § 7, art. 1, and § 5, art. 2, of ch. 68, above referred to, that all public offenses are indictable, and that all offenses under our law may be prosecuted by indictment of a grand jury returned in the district court. The only reasonable construction of these provisions of the criminal procedure acts and of the acts relating to the general criminal jurisdiction of justices of the peace is that they were intended to have merely the jurisciction over criminal offenses of a committing magistrate, unless by some "other laws" justices of the peace were given jurisdiction to try and determine the same.

This code of criminal procedure provides that all criminal offenses may be prosecuted in the district court, by the intervention of a grand jury, that is, that they are indictable, but at the same time and in the same chapter and in one instance in the same article, and in the other in the immediately preceding article, the legislature expressed the intention of giving justices of the peace jurisdiction to hear and determine such offenses as by "other laws" or by other enactments they are specifically given the power to hear and determine.

Section 3, art. 1, ch. 71, laws of Oklahoma, 1890, p. 934, does not give this power because it provides that the cases of misdemeanor therein referred to and which are not indictable may be tried and determined and by the express provision of the criminal code, with which this section must be construed, all such misdemeanors as those which might come within the provisions of this section are expressly made the subject of indictment; for the statute says that the "district court has jurisdiction to try, by the intervention of a grand jury, all public offenses," and "all public offenses" would certainly include all misdemeanors, and all misdemeanors being indictable and the justices

of the peace being given jurisdiction to try only a specific class of misdemeanors which are not indictable, that class of misdemeanors being indictable, justices' courts would not have power to hear and determine the same.

Likewise § 1, art. 1, of ch. 69. p. 1026, laws of Oklahoma, 1893, does not give justices of the peace the jurisdiction claimed in this case, for it provides:

"Sec. 1. The criminal procedure relating to the jurisdiction and duties of justices of the peace as committing magistrates, direct the mode of proceeding, when an information, verified by oath, is laid before them of the commission of a public offense triable on indictment."

It is true there are other. provisions of this Code of Criminal Procedure, provided for justices of the peace, that do prescribe the mode of hearing and determining cases by jury or otherwise, before justices of the peace, but this only prescribes the mode of trial and does not define the cases that may be tried. The legislature, by the provisions of § 5, art, 24, ch. 25, laws of Oklahoma, 1893, which article is the one referring to assault and battery, gave to justices of the peace jurisdiction to try and determine the cases arising thereunder; and this is, as we think, one of the illustrations of the specific cases which the legislature meant justices of the peace might have power to hear and determine without indictment where the jurisdiction was given by "other laws," or "in cases concerning which lawful jurisdiction * * * is or may be conferred upon" justice courts. Construing all of the statutes together, we hold that justices of the peace have no power to try and determine any criminal action excepting such as they are by specific enactment given power to try and determine. There is no provision of law by which justices of the peace are given jurisdiction to try and determine any of the offenses described in article 54 of the laws of Oklahoma of

1893, relating to Crimes and Punishment, and of which §§ 1, 13 and 14, referred to, are a part; and, this being true, the conclusion necessarily follows that the probate court of Pottawatomie county had no jurisdiction to try and determine this case.

At the time this case was tried by a jury of six men, before the probate judge exercising the powers and authority of a justice of the peace of this territory, the law provided in criminal cases that either party was entitled to a trial of such cases that might be tried and determined before a justice of the peace, by a jury composed of six men. Was that law valid? is the second question asserted in the negative by the defendant.

A part of article 6 of the amendments to the constitution of the United States provides that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury." * *

This constitutional provision is undoubtedly applicable to judicial proceedings in this territory. But has the legislature, by enacting that persons prosecuted in justices' court, in cases where justices of the peace are by specific enactment given power to try and determine the same, when they demand a trial by jury, shall be tried by a jury of six men instead of twelve, as such jury was composed at the common law, taken away the right which all persons in this territory enjoy under the federal constitution to a trial by jury?

The same justice code of criminal procedure provides that any defendant who is convicted, and against whom judgment is rendered in the justice's court, may appeal to the district court where he shall enjoy a trial anew upon questions of law and fact, or of fact alone in said cause. And the code of procedure for the district court in both civil and criminal cases

affords the fullest opportunity for trial by jury of twelve men.

This question has been so frequently passed upon by courts and law writers that there is little more necessary than to observe what they have held upon the subject.

Thompson, in his valuable work on trials, in a note to § 83, vol. 1, in referring to the right of a trial by a jury of twelve men, under our constitutional provisions entitling a defendant to a trial by jury, says:

"But as justices of the peace do not form any part of the ordinary judicial machinery of the common law, it is held that such constitutional provisions do not inhibit the legislature from authorizing a jury of less than twelve in justices' courts, especially since the right to a jury of twelve men is secured in the unlimited right of appeal to a superior court of record."

In the case of *Work vs. The State of Ohio*, 2 Ohio State Reports, 297, the supreme court of that state says:

"We do not intend to imply a doubt of the constitutionality of the act allowing juries before justices of the peace, composed of six men.   Wherever facts are to be found in any proceeding, in which a jury was not required by the common law, a jury of any number may be authorized, within the discretion of the legislative body.   Juries did not belong to these inferior courts at the common law, and so long as an appeal is provided for to the common law courts from their determinations, it is clear no constitutional objection can arise, whether facts are found by the magistrate or by the aid of a jury by any number of men.   These questions were long since settled in *Emerick vs. Harris*, 1 Binn. 416, and other cases in Pennsylvania."

This case is cited and approved in *Norton vs. McLeary*, 8 Ohio State, 205.

The same conclusion is reached in *State vs. Beneke*, 9 Iowa, 203, where the court says:

"We must regard it as within the power of this people, when forming their fundamental law, to provide

that a jury should consist of six in inferior courts, and that such courts should try inferior offenses, leaving the way open to a jury of twelve, by appeal."

Mr. Thompson, in support of his note above given, also cites cases showing that his doctrine is upheld in New York, Michigan and Illinois.

*In re Rolphs*, 30 Kan. 758, the supreme court of Kansas held that where the law authorized a police judge to hear and determine, without a jury, alleged violations of city ordinances, and where the party was given the right of an appeal to the district court, where a trial by a jury could be enjoyed by the defendant, that the defendant's right of a trial by jury was not taken away, and such an act was not unconstitutional.

These authorities fully sustain the doctrine that if a defendant is given the right of appeal, under reasonable regulations, from the judgment of conviction had before a justice court, to the district court or common law court, in which he may have a trial before a lawful jury, that the law providing for a trial by a jury of less than twelve men in the action in the justice court does not deprive him of his enjoyment of the right of trial by jury. Although tried without a jury in the justices' court or police court, if he may enjoy or have access to the right of trial by jury by simply appealing the cause to the common law court, his right of trial by jury is not abridged. Our justices' procedure does give the defendant easy access to the district court by appeal, and the district court affords the trial by jury.

We therefore hold that our statute providing for a trial by a jury of six men in criminal cases in justices' courts is constitutional.

For the error committed in trying the defendant upon a complaint, without an information filed by the county attorney in this case, the judgment of the pro-

bate court must be reversed, at the cost of the territory, with directions to discharge the defendant unless he is proceeded against by information filed by the county attorney within ten days after the receipt of the mandate in this cause.

All of the Justices concurring.