**Jimmy Wayne SMITH and Jerry Smith, Plaintiffs in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15309.**

Court of Criminal Appeals of Oklahoma.

Feb. 17, 1971.

John D. Boydston, Tulsa, for plaintiffs in error.

G. T. Blankenship, Atty. Gen., Robert Macy, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Jimmy Wayne Smith and Jerry Smith, hereinafter referred to as defendants, were charged, tried and convicted in the District Court of Muskogee County for the offense of Rape in the First Degree; their punishment was set at five years imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

As briefly stated as is permitted, considering a voluminous case made, the evidence at the trial revealed that the alleged rape commenced in Sequoyah County and continued into Muskogee County. The victime, age 14, was walking down a road with her boyfriend and her cousin, when a car, containing the defendants and two other persons, stopped near them and asked directions to the Lake Tenkiller Dam. A short conversation ensued and they started back down the road. The car followed them and the defendant Jimmy Wayne Smith chased her and bodily threw her into the back seat. Mannon knocked the boyfriend down and kicked him in the face.

The car, driven by defendant Jerry Smith, drove away. The defendant Jimmy Wayne Smith, held her while Mannon removed her lower clothing as she was fighting and screaming. Mannon inserted his private parts into her privates parts and engaged in intercourse overcoming her struggles. He withdrew from her and told the defendant, Jimmy Wayne Smith, to get into the front seat. The victim was able to observe two road signs concerning "Strayhorn Landing." Mannon, shortly thereafter, re-entered her body and continued the sexual intercourse.

At the completion of such, the dome light of the car was turned on and the victim was able to get a good look at the assailants. She was allowed to replace her clothing and as the car slowed on a gravel road, she leaped from the car and ran some distance to a house and reported the incident.

Ronald Robinson, the boyfriend, substantiated the testimony of the victim relative to her abduction. He was not able to identify the assailants.

Virginia Hunter, the cousin of the victim, testified that she was walking slightly ahead of the victim and the boyfriend and heard the victim yell for her to run and get her father.

Hosea John Anderson testified that he was in the car with the defendants and Mannon; that the defendant Jimmy Wayne Smith threw the victim into the back seat of the car and held her while Mannon raped her. Mannon removed himself from the girl and later engaged in another act of intercourse. He denied making contrary statements to private investigator Nixon.

Mrs. Raymond Williams testified that the victim, crying and hysterical, reported that she had been raped.

Jack Thornton, investigator for the District Attorney, testified that he checked certain distances in his investigation; that the girl was picked up in Sequoyah County and jumped out of the car in Muskogee County.

Dr. Hester testified that he examined the victim early in the morning and observed bruises around the hymenal ring and found live sperm in the vagina. He also observed abrasions on the elbows and legs, received when she leaped from the car.

Raymond Williams testified for the defense, that the victim knocked on his door at 10:15 p. m. He had observed a car go in and out of his driveway at 9:50 p. m.

Jack Nixon, a private investigator, testified that he had interviewed Hosea Anderson and that Anderson advised him that the girl had gotten in the car willingly; that there was no struggle in the back seat; that Anderson had touched the girl's leg; and that the County Attorney had told him that he was not to say anything or he might go to the penitentiary.

He testified about measuring distances and found that it was 13.8 miles from the pickup point to where the girl was let out of the automobile. Driving at a normal speed, the distance could be covered in approximately forty-five minutes.

The defendant, Jimmy Smith, testified that the girl voluntarily got into the car; that the girl removed her own clothing and did not protest when Mannon removed his. He did not observe any struggle and heard only some laughing; that Mannon had one act of intercourse with the girl. Neither he, nor his brother, held the girl. She jumped out of the car near the Williams' house. He testified that the dome light was broken and did not come on while the girl was in the car.

Linda Smith, the defendant Jerry Smith's wife, testified that she was in the view of the car when the girl got in it; that the girl voluntarily entered the car and was not thrown into it.

The defendants' first proposition alleges that the trial court erred in refusing to grant defendants a continuance following the filing of Amended Information dealing with matters of substance. The original information alleged that the crime occurred in Muskogee County. The amended in-

formation, filed three days before trial with the permission of the trial court, alleged that: "said acts commencing in Sequoyah County, Oklahoma, in a motor vehicle at a distance of approximately 3.8 miles from the Muskogee County line or State Highway 10A, and the act of sexual intercourse continued into and in Muskogee County, State of Oklahoma * * *"

The defendants contend that the amendment to the information was one of substance which changed the venue and jurisdictional basis for the prosecution. The defendants objected to the filing of the amended information and properly filed a Motion for Continuance with attached affidavit alleging surprise and that they were materially prejudiced by the amendment in that they needed time to investigate the new allegations raised by the amended information.

This Court has consistently held that an information may be amended in matters of either form or substance when it can be done without prejudice to the substantial rights of the defendant. Cody v. State, Okl.Cr., 376 P.2d 625.

The record reveals that the trial court spent many hours hearing motions prior to trial and was thoroughly familiar with the facts of the case. The record further reveals that the amended information dealing with venue was not, in fact, a surprise to the defendants. At the time the amended information was presented to the Court, defense counsel stated:

"Now I'll tell the court for the record that I have checked out these things. I have gone and taken testimony and checked it down to the foot. I've measured it. I've clocked it in cars. I've clocked it on my speedometer * * *" (CM 533)

▇ We are of the opinion that the trial court correctly ruled that this was one continuous act originating in Sequoyah County and continued without interruption into Muskogee County and the amendment would not cause any prejudice to the defendants. The record indicates that this knowledge was known to the defendants and clearly no surprise could result. We further observe that under the provisions of 22 O.S.1961, § 124, that the charge could have been filed in either Sequoyah or Muskogee Counties. We, therefore, find this proposition to be without merit.

The defendants' next proposition contends that the trial court erred in refusing to require disclosure of evidence material and useful to the defense, which was in the possession of the prosecution. This proposition concerns an alleged copy of a statement made to the prosecution by the victim to the effect that she had been raped twice. The defendants filed a motion requiring the prosecution to furnish a copy of the statement, which the trial court denied. They allege that the statement conflicted with the testimony of the victim and would have been useful to the defense in impeaching said testimony.

The record is not clear whether such a statement did, in fact, exist. The prosecuting attorney, at one point, said that the statement had been transcribed and later said it was an oral statement. The record does reveal that the prosecuting attorney informed the court and defense counsel that the girl said she had been raped twice. The prosecuting attorney testified at one of the many hearings that he did not have knowledge of any evidence in his file that would be beneficial to the defendants.

▇ We have carefully examined the records of this case, and examined the authorities submitted by the defendants. We are of the opinion that a defendant is not entitled to an inspection of the work product of the prosecutor consisting of statements signed by other than the defendant, unless such statements contain material which is material to the defense of the case. See Shapard v. State, Okl.Cr., 437 P.2d 565 and Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737.

▇ In the instant case the girl's original statement indicated that she had been raped twice. Her testimony at the trial revealed that Mannon had inserted his pri-

vate parts in her private parts, withdrew and shortly thereafter re-entered. Witness Anderson testified that the girl was raped twice. We are of the opinion that under the bizarre set of circumstances that a fourteen year old girl would have some difficulty in ascertaining with any legal certainty if she had been raped once or twice. Having found no material inconsistency between the original statement and eventual testimony, we are of the opinion that the defendant was not entitled to the statement and was not prejudiced by the trial court's order denying the same. We find this proposition to be without merit.

■ The final proposition of error alleges that the defendant, Jimmy Smith, was effectively deprived of his right to assistance of competent counsel at the time of his participation in a police line-up. The defendant, Jimmy Smith, filed a Motion to Suppress, which was heard in a lengthy hearing prior to trial concerning the line-up which was overruled by the trial court. Many witnesses testified concerning what transpired at the line-up. Max Watkins was appointed by the court to represent the defendant, Jimmy Smith, at the line-up. He conferred with the defendant prior to the line-up and was present while it was conducted. He testified that it was the most perfect line-up that he ever observed. The five participants were dressed identically, were the same height, age, and had similar complexions (CM 389). The evidence indicated that the victim identified the defendant without encouragement from other persons. We are of the opinion that the line-up was substantially conducted in accordance with the procedures suggested by this Court in Thompson v. State, Okl. Cr., 438 P.2d 287.

We further observe that although the defendant did not object to the in-court identification, that the evidence at the trial revealed that the identification was made on the basis of observations made at the time of the crime. We, therefore, find this proposition to be without merit.

In conclusion, we find that the record is free of any error which would justify modification or reversal, the punishment imposed is the minimum allowed by law, and we are of the opinion that the judgment and sentence should be, and the same is hereby, affirmed.

NIX and BRETT, JJ., concur.