Roy CURTIS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–73–343.

Court of Criminal Appeals of Oklahoma.

Feb. 6, 1974.

Duane A. Woodliff, Henryetta, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., James C. Peck, Legal Intern, for appellee.

## OPINION AND DECISION

BRETT, Judge:

Appellant, Roy Curtis, hereinafter referred to as defendant, was convicted by a jury in the Okmulgee County District Court, Case No. CRF–72–30, for the offense of Obtaining Money by False Pretenses, and was sentenced to serve five (5) years imprisonment. Judgment and sentence was imposed on June 11, 1973, after defendant's motion for new trial was denied. Defendant was unable to post bail pending appeal, and is presently incarcerated in the Oklahoma State Penitentiary. Defendant was represented by court appointed counsel, Mr. Duane A. Woodliff of Henryetta, Oklahoma.

The facts briefly stated reveal that in July and August of 1972, two men representing themselves to be employees of the Triple A Exterminators in Henryetta, one of whom was the defendant, were paid the sum of Two Thousand Four Hundred Dollars ($2,400.00) on one occasion, and later an additional sum of Fifteen Hundred Dollars ($1,500.00), for work on the complaining witness' home. The complaining witness was Mr. Victor M. Baird, a man 63 years of age. Soon thereafter, on December 15, 1972, two other men approached Mr. Baird at his home and informed him that they were officers of the law; and that they were attempting to locate the men who had earlier performed the exterminating services on his home. They informed Mr. Baird that he would be contacted by one of the men who had swindled him; and in order to apprehend the two men, Mr. Baird should cooperate with them and give them the sum of Five Thousand Two Hundred Dollars ($5,200.00), to be used by them to catch the embezzlers. The two men insisted that the money should be in cash. However, due to circumstances which arose, and upon the advice of the bank personnel, Mr. Baird obtained a cashier's check made payable to his brother, Glenn Baird; but when the check was typed the name was misspelled as "Glen Baird." Mr. Baird delivered the cashier's check to the two men and at their request he endorsed the check "Glen Baird." Thereafter, defendant did not see the men again. Several days later the complaining witness consulted the local police concerning what had happened to him, and the police proceeded to conduct their investigation.

Defendant was apprehended in Waco, Texas, where he worked for Mr. S. E. Chastain doing extermination work; he also worked as a salesman for Chastain Salvage Company. When he was arrested at the Texas National Bank in Waco, Texas, he was cashing a check at the drive-in window. While defendant was in the Waco, Texas jail, Mr. Fred Lee, Special Agent of the FBI, took the defendant's signed statement wherein defendant said that he deposited a check to the account of "Glen Baird," in the amount of Five Thousand Two Hundred Dollars ($5,200.00) in the Texas National Bank on December 20, 1972, at the request of Mr. Chastain, and that he had cashed other checks on that account for Mr. Chastain; defendant stated he did not open the Glen Baird account, nor did he sign the checks, although he did endorse checks which were made out and given to him by Mr. Chastain. In the statement defendant asserted that he was only an errand boy for Chastain, and that all of the money obtained from the checks was turned over to Mr. Chastain.

Soon after defendant was taken to the jail in Henryetta, Oklahoma, the local police and Mr. B. G. Jones, an agent for the Oklahoma Bureau of Investigation, took six (6) photographs of different individuals to the home of the complaining witness

for him to view. Even though hesitatingly, the complaining witness picked out defendant's photograph as one of the two men who came to his home and posed as law enforcement officers, and to whom he delivered the cashier's check. The complaining witness also made an in-court identification of defendant as one of the two men to whom he gave the cashier's check, and testified that defendant did most of the talking for the two men who posed as law enforcement officers.

The defense offered at this trial was that of alibi, in which defendant asserted and attempted to prove to the jury's satisfaction that on December 15, 1972, he was in Waco, Texas; and that this was a matter of mistaken identification. In his defense he offered the testimony of his wife, Ruth Curtis, who testified she saw defendant every day during the month of December, 1972, becoming formally engaged to him on December 13. She testified further that defendant never left Waco, Texas during the month of December, and that on December 15, the day the crime occurred, she and defendant were at her girl friend's house where defendant bought some Stanley Product's perfume. Mr. Richard Hutton, a legal intern, testified that he interviewed defendant in the Henryetta Jail and while going through defendant's personal effects, found a sales receipt for two bottles of cologne from Stanley Products, dated December 15, 1972. This receipt was introduced as defendant's Exhibit 4.

Defendant's sister, Meryl Casper, testified that she lives in Fort Smith, Arkansas, and that defendant telephoned her on the 4th, 6th, 7th, and 11th of December, 1972, and that she called him on the 7th and 13th. She related that the telephone calls were made to her collect and her telephone bill was introduced into evidence to verify these calls.

Defendant testified in his own behalf and related that he works for S. E. Chastain doing extermination work, and as a salesman in the Chastain Salvage Company. He related that his duties include depositing and cashing checks for Mr. Chastain; that he moved from Oklahoma to Waco in September, 1972, and has been there ever since. He testified that he was not in Oklahoma on December 15; that he did not talk to Mr. Baird, the complaining witness; nor did he impersonate an officer in Henryetta on December 15, 1972. He denied knowing that the Five Thousand Two Hundred Dollar ($5,200.00) cashier's check which he deposited in the Texas National Bank for Mr. Chastain came from the complaining witness. He asserted further that the check was deposited at Chastain's direction and that the Glen Baird account was already opened by someone else when he deposited the cashier's check in that account. He related that he cashed several other checks on that account at Chastain's direction, but that all the checks were drawn and signed before defendant ever saw them. Defendant further testified that he learned of the connection between the cashier's check and Mr. Victor Baird after he was arrested. He related, however, that after he saw Mr. Baird he realized that it was his home under which he worked as an exterminator in August of 1972, before he moved to Waco, Texas.

Other witnesses who testified related that the complaining witness withdrew from his savings account in the American Exchange Bank in Henryetta the required sum of money used to purchase the cashier's check. Mr. Sam Johnson, a Deputy Sheriff for McClendon County, Waco, Texas, who also served as security guard for the Texas National Bank, testified that he arrested defendant when defendant was attempting to cash a check made payable to cash with the signature of "Glen Baird," but that this was not the cashier's check from the American Exchange Bank in Henryetta.

Defendant's first proposition asserts: "The trial court erred in overruling defendant's request for a copy of the defendant's statement which had been reduced to writing by an Oklahoma Crime Bureau Agent." This complaint relates to the in-

terrogation by Mr. B. G. Jones, an Agent of the Oklahoma Bureau of Investigation. The trial record reflects that the only written statement signed by defendant was the one taken by Mr. Fred Lee, Special Agent of the FBI. It also appears from the record that a copy of that statement was provided defendant. However, the testimony of Agent Jones was that he only took notes concerning what defendant told him, that no written statement was taken in his presence, and that none was given or signed in his presence.

It is not entirely clear from the record whether or not defense counsel requested these items at the preliminary hearing. In his brief he asserts that he did make this request of the examining magistrate, but the same was denied. The record seems to be clear, however, that defendant did not file a written application for the items he wished to inspect. It appears that defendant and his court appointed counsel appeared for trial and had voir dired the jury, when the court adjourned into chambers. While in chambers it came to the trial judge's attention that defendant had not been arraigned; so, with the consent of defendant and his counsel, the trial court proceeded to arraign the defendant. Defendant, however, agreed to the delayed arraignment and proceeded to trial upon the providing of the envelope in the possession of Agent Jones, and a copy of a fingerprint purportedly lifted from that envelope. After arraignment, the parties returned to the courtroom where both sides announced ready for trial.

Mr. Jones, the Oklahoma Bureau Agent, testified that the scribbled name written on the envelope appeared to be "Bill David." The complaining witness testified that when the two men impersonating police officers were at his home, he asked one of them what his name was, and the man replied Bill Davis and wrote his name on the envelope. Mr. Jones also testified that the fingerprint which appeared on the envelope could not be lifted from the envelope, but that it was photographed. On cross-exam-

ination he testified, "I was just advised a few minutes ago that there is not sufficient fingerprints here for an identification." He related that he had turned a set of defendant's fingerprints and the photograph of the envelope print to the laboratory technician for comparison; and by telephone he had been advised by the technician that no comparison could be made.

Defendant's second proposition must be discussed in relation with the first, insofar as both pertain to pretrial discovery. Defendant's second proposition asserts: "The trial court erred in overruling defendant's request for a copy of fingerprints and other evidentiary items taken from the scene of the crime." This second proposition more directly relates to the fingerprint allegedly left on the envelope and defendant's oral request for the copy of defendant's fingerprints and the photograph of the print on the envelope. In support of these propositions defendant cites: Doakes v. District Court of Oklahoma County, Okl.Cr., 447 P.2d 461 (1968); Smith v. State, Okl.Cr., 481 P.2d 468 (1971); and Stevenson v. State, Okl.Cr. 486 P.2d 646 (1971).

Considering the notes Agent Jones made during his interview of defendant, it is reasonably clear that the defendant is not entitled to the work product of the prosecutor or his investigators; and insofar as no written statement was taken from the defendant by Agent Jones, his field notes constitute part of his work product, to which defendant is not entitled. In Doakes v. District Court, supra, this Court held:

"In the interest of justice and for good cause shown, the prosecution should allow pre-trial inspection by accused or his counsel of a statement in prosecution's possession given by the accused without benefit of counsel where accused is later unable to remember what he said in the statement."

Later in Smith v. State, supra, wherein defendant filed a written motion requiring the prosecution to furnish a copy of the

statement which the prosecutrix gave to the police, we held:

"We are of the opinion that a defendant is not entitled to an inspection of the work product of the prosecutor consisting of statements signed by other than the defendant, unless such statements contain material which is material to the defense of the case."

Several months later, in Stevenson v. State, supra, at page 650, this Court set forth the American Bar Association's standards for criminal justice, relating to discovery and procedure before trial, i. e. parts of paragraph 2.1, which pertained to the prosecutor's obligations. However, in *Stevenson* defendant filed a written motion for the "criminal records of the prosecution witnesses," and "inspection of materials favorable to the defendant and in the possession of" the State. We found, however, that the defendant did not specify what materials he desired. In the Stevenson decision, at page 649, this Court stated:

"As to pre-trial discovery and inspection of articles in the possession of prosecuting authorities, this Court has held there should be disclosure to the defendant of technical reports . . . the alleged death weapon with reports concerning same, and defendant's statement to police. . . . [Citations omitted.]

"Furthermore, 22 O.S.Supp., 1970, § 749, enacted in 1969, expressly allows a defendant to a copy of the 'statement of any person having knowledge of such criminal offense' made to any peace officer or prosecutor. This Court had denied inspection of the prosecutor's 'work product.' [Citation omitted.] And denied inspection of a detective's personal notes not subject to introduction into evidence."

■ Consequently, it was not error when the trial court did not require the prosecution to furnish defendant with a copy of Agent Jones' notes. Had Agent Jones taken a written statement, defendant would have been entitled to that statement.

Likewise, insofar as the alleged photograph of the fingerprint on the envelope was not shown to be other than how Agent Jones testified, and it was not used in the prosecution against defendant, we deny defendant's first and second propositions.

■ Defendant's third proposition of error asserts, "The trial court erred in allowing the State to inquire into the juvenile record of accused." It is defendant's contention that insofar as he was convicted at the age of 16 years for the offenses of "joy riding and second degree burglary," that the State should not have been permitted to inquire concerning these alleged convictions, because he was a juvenile at the time. On cross-examination the State inquired of defendant concerning these convictions to test his credibility. The law at the time defendant was convicted provided that a boy 16 years of age could be tried as an adult. It was not until 1972 when 10 O.S.1971, § 1101(a) was amended to provide that persons under 18 years of age are juveniles. Consequently, we are bound to hold that at the time defendant was convicted he stood charged as an adult. We therefore believe that defendant's reference to Raper v. State, Okl.Cr., 501 P.2d 847 (1972), wherein this Court held that cross-examination as to a juvenile offense for impeachment purposes was highly improper, is not specifically applicable to the instant case.

Defendant's fourth proposition of error asserts, "The trial court erred in failing to limit the State's cross-examination of the defendant to the scope of direct examination, and thereby allowing the State, over the objections of the defendant, to cross-examine the defendant as to alleged uncharged misconduct." This complaint pertains primarily to the prosecutor's interrogation of defendant, concerning work which he and another man performed on Mr. Baird's house in August, 1972. Mr. Baird had testified in the State's case in chief that two men representing an exterminating company performed work under his house during August, and that on one

occasion he gave them a check for Two Thousand Four Hundred Dollars, and later he gave them a second check for some Fifteen Hundred Dollars. Likewise, Mr. Baird had testified that the reason for giving the cashier's check to the two men posing as police officers was allegedly to assist them to apprehend the two men who had earlier worked under Mr. Baird's house in August. Also, on direct examination defendant testified that he deposited a cashier's check for Five Thousand Two Hundred Dollars ($5,200.00) at Mr. Chastain's instruction, and Mr. Baird identified defendant as being one of the two men. Consequently, as we view the prosecutor's cross-examination, this particular area of interrogation would be evidence of other offenses which is admissible when it is explanatory of the motive or intent of the offender in the commission of the offense charged. The result is that the sum of money which defendant was charged with obtaining from Mr. Baird was predicated upon the initial work allegedly done in August, 1972. Therefore, in order to consider the impact of the cashier's check incident, it is necessary also to consider the two earlier checks given by Mr. Baird in August, 1972. It was the prosecutor's contention that the entire transaction constituted a scheme and design on the part of defendant and others to obtain money under false pretenses from Mr. Baird.

Defendant cites Doser v. State, 88 Okl. Cr. 299, 203 P.2d 451 (1949) for the authority that it is the trial court's duty to confine the cross-examination of defendant to issues of and transactions which are pertinent to the charge laid in the information. In the same case this Court said at page 464, 203 P.2d:

"This Court has held that other offenses committed by accused are admissible when the same shows motive with respect to the offense charged. [Citations omitted.] In Smith v. State [83 Okl.Cr. 209, 175 P.2d 348 (1946)] evidence of other offenses are admissible when they are explanatory of the motive or intent of the offender in the commission of the offense charged. We therefore are of the opinion that evidence in relation to the two burglaries in Austin, Texas, is admissible as tending to establish the motive for the theft of the automobile with which to effect the escape of the defendant and her accomplices. Likewise, we are of the opinion that the desire to escape provided the motive for the trip to Oklahoma City and the desire to get to Oklahoma City until the 'heat was off' and the breakdown of the 1939 Oldsmobile provided the motive for the attempted robbery and the murder of Streckenfinger. Moreover, where the two crimes are logically related or connected, so that proof of the other tends, or is necessary, to prove the one charged, or is necessary to complete account thereof, as where they are so inseparable as to constitute but one transaction or crime, or where the extraneous crime forms part of a chain of circumstantial evidence of guilt of the crime charged the evidence of other crimes is admissible."

■ Consequently, we arrive at the conclusion that the initial sums obtained from Mr. Baird in August of 1972, being the predicate for the obtaining of the Five Thousand Two Hundred Dollars ($5,200.-00) for which defendant was charged, was part of the res gestae. We will therefore deny defendant's fourth proposition.

■ Defendant's fifth proposition asserts the verdict is not sustained by the evidence and is contrary to the law. After reviewing the transcript of testimony, we find that defendant was sufficiently connected with the cashier's check to satisfy the jury that defendant was guilty as charged. Notwithstanding the fact that the complaining witness' initial description of one of the two men who posed as a police officer, and who accepted the cashier's check, was not entirely accurate, we believe that the in court identification was sufficient to satisfy the requirements of the jury. Defendant admitted possession of the cashier's check; he admitted making

the deposit; he admitted having been a part of the alleged work under defendant's house in August 1972, and was sufficiently connected to the cashier's check to submit the question to the jury. At this stage we are unable to say that defendant's identification was a "misidentification," as contended by defendant. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant is guilty as charged, this Court will not interfere with the verdict, even though there is sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts.

█ Defendant next asserts that the punishment assessed by the jury is excessive; however, we observe that defendant did not receive the maximum punishment allowed by statute. We must therefore conclude that the punishment is not excessive.

█ Defendant's next complaint refers to remarks and statements by the District Attorney during closing arguments as being "evidentiary harpoons," and highly prejudicial and calculated to violate the rights of the accused. We observe that the closing arguments were not recorded and therefore are not before this Court. In Pitts v. State, Okl.Cr., 431 P.2d 449 (1966), this Court held, "Where there is no proper record in the casemade of alleged improper remarks of the prosecuting attorney to the jury, such assignment of error will not be considered on appeal."

█ Defendant's seventh and last proposition asserts that the trial court committed error in overruling defendant's motion for new trial. In support of this proposition defendant relies on the provisions of 22 O. S.1971, § 952, which provide that a new trial may be granted upon newly discovered evidence. However, we observe in defendant's brief that he admits that Mr. Chastain and Glenda Pelham both had earlier agreed to appear at defendant's trial,

but both failed to do so. Consequently, it cannot be said that their evidence was newly discovered. Notwithstanding the fact that defendant attached to his motion several affidavits from people from Waco, Texas, it appears that such testimony would be cumulative in nature to what was presented for the jury's consideration. It has long been the holding of this Court that whether a motion for new trial shall be granted is within the sound discretion of the trial court, and unless an abuse of that discretion is shown, this Court will not change the trial court's decision.

Therefore, after carefully considering the record in defendant's trial, we are of the opinion that defendant received a fair trial and that there was sufficient evidence to sustain the charges lodged against him, and that the judgment and sentence in Okmulgee County District Court Case No. CRF–73–343 should be affirmed.

It is so ordered.