Steven Lee ALLEN, Petitioner,

v.

**DISTRICT COURT OF WASHINGTON COUNTY, State of Oklahoma, and the Honorable Myrna Lansdown, Special Judge, Respondents.**

**No. 0–90–0825.**

Court of Criminal Appeals of Oklahoma.

Dec. 20, 1990.

As Corrected Jan. 9, 1991.

**ORDER DENYING WRIT OF
MANDAMUS AND LIFTING
STAY OF PROCEEDINGS**

The Petitioner has filed a Petition for Writ of Mandamus requesting that this Court direct the District Court of Washington County to grant Petitioner's discovery requests in Case No. CRF–90–239. Petitioner appeals from an order by the District Court denying in part and granting in part discovery requested by the Petitioner prior to the preliminary examination. The

District Court cited *Stafford v. State*, 595 P.2d 797 (Okl.Cr.1979), as authority for denying Petitioner's discovery requests as being premature; and *State v. Benson*, 661 P.2d 908 (Okl.Cr.1983), as support for the examining magistrate's lack of authority to order production of discovery material. The District Court denied two requests for evidence. However, the requests at that time were found to be for exculpatory evidence and subject to a continuing obligation on the part of the prosecution to provide as that evidence becomes known.

The issues presented on appeal require an analysis of the historical development of our court system since statehood to ensure the proper application of our current statutes and caselaw. An examination of the caselaw in this area tracks the development of the interpretation of the procedural statutes which have existed since 1910 and legal fictions which have evolved in the attempt to adapt to changes in the courts' reorganization and jurisdiction. This anomaly, which failed to interpret and apply the existing statutory provisions as we transitioned into a unified court system, has rendered our jurisprudence confusing and bent the statutory procedure to the present breaking point.

In order to properly apply the statutory provisions which were not amended during court reorganization, it is necessary to understand the pre–1969 dichotomy of jurisdiction and examine the fictions relating to the power of the courts and judges created subsequent to 1969.

Prior to the adoption of State Question No. 448, Legislative Referendum No. 164 on July 11, 1967, the Oklahoma trial court system was comprised of a combination of constitutional and statutory courts of both limited and general jurisdiction. The trial courts established by the Oklahoma Constitution, article 7, § 1, were the District Courts, County Courts, Courts of the Justice of the Peace and Municipal Courts. A provision of article 7, § 17, specifically provided "County Courts shall also have and exercise the jurisdiction of examining and committing magistrates in all criminal cases". This same specific power was granted the Justices of the Peace in article 7, § 18.

The Court of Common Pleas and Superior Court were created by statute. *See* 20 O.S.1961, § 651 et seq. and § 141 et seq. An examination of the statutes creating the Court of Common Pleas reveals the formation of a limited jurisdiction court with the assigned judges having general jurisdiction powers. *See e.g.* 20 O.S.1961, §§ 651, 654, 655 (the Court of Common Pleas had limited jurisdiction but statutes separately vested the judges of the Court of Common Pleas with the general jurisdiction powers of the judges of the District Courts.) In addition, under the provisions of 20 O.S. 1961 § 651 the constitutional power of the county courts was incorporated by reference to the jurisdiction of the Court of Common Pleas. The power of the judges of the County Court and the Justices of the Peace was the same as the jurisdiction of the courts to which they were assigned.

Upon the passage of State Question No. 448 each of the constitutional and statutory courts were consolidated into the District Courts under our current unified court system. District Judges and Associate District Judges became general jurisdiction judges of the District Courts. We ceased to have limited jurisdiction courts; and, except for the Special Judges appointed pursuant to Oklahoma Constitution, article 7, § 8(h), the judges of the District Courts were no longer limited in the scope of their jurisdiction. These constitutional amendments became effective January 13, 1969.

Our statutory scheme is based on the premise that a "complaint" or "preliminary information" will be presented to an "examining magistrate" who will conduct the preliminary examination to determine if the defendant should be held to answer the charge and if the State should be granted permission to file a formal information in the District Court. *See e.g., Christian v. State*, 49 Okl.Cr. 16, 292 P. 876 (1930).

The term "magistrate" is defined in 22 O.S.1981, § 161 as "an officer having power to issue a warrant for the arrest of a person charged with a public offense". The constitutional references to "exam-

ining and committing magistrates" were repealed upon the passage of judicial reorganization. However, the definition in Section 161 has remained the same since its passage in 1910. The caselaw does not distinguish between the Section 161 definition and the constitutional "examining and committing magistrate" when the role of the magistrate at preliminary examination is discussed.

The statutes on preliminary examination and commitment have also remained unaltered since 1910, except for a 1961 amendment to Section 258. The preliminary examination required pursuant to 22 O.S. 1981, §§ 251 through 276 is an examination which occurs contemporaneous with the initial appearance and without any unreasonable continuance. *See Walters v. Williams*, 474 P.2d 661, 665 (Okl.Cr.1970), *Jennings v. Raines*, 353 P.2d 147 (Okl.Cr. 1960), *In Re Kittrell*, 318 P.2d 470, 472 (Okl.Cr.1957). The preliminary examination is limited by the provisions of Section 264 which imposes jurisdictional limitations on the courts and judges where the complaint was filed and restricts the scope of the examining magistrate to findings that "any public offense has been committed, and that there is sufficient cause to believe the defendant guilty thereof". This limited scope of inquiry has been recognized by this Court as recently as 1986 in *Matricia v. State*, 726 P.2d 900, 903 (Okl.Cr.1986).

In *Wyatt v. State*, 69 Okl.Cr. 93, 100 P.2d 283, 285 (1940), this Court determined that the district court did not acquire jurisdiction unless the defendant actually had a preliminary hearing or waived same. This was due to the jurisdictional limitations of the courts and the requirement that the magistrate make the Section 264 findings before an information could be filed in the district court. Therefore, the concept of preliminary examination and bindover to stand trial in a felony case must be interpreted within the context of the court organization and statutory scheme at the time of enactment.

■ Chapter 4 of Title 22 is entitled Proceedings After Commitment and must be read as applying after a defendant is boundover on felony charges by an "examining magistrate". Section 301 begins the chapter by stating "[e]very felony must be prosecuted by indictment or information in the district court or superior court". Therefore, the formal information charging a defendant with a felony offense is not filed under our statutory framework until after the "examining magistrate" authorizes it to be filed by endorsing the complaint in accordance with Section 264. This charging instrument, whether styled complaint, preliminary information or information, is in substance nothing more than a preliminary complaint which allows the examining magistrate to conduct an examination to determine if the person charged should be held to answer.

■ The Justice of the Peace was very limited in authority and jurisdiction. This limitation was pointed out in *West v. State*, 24 Okl.Cr. 225, 231, 217 P. 1067 (1923), when this Court stated "[i]n felony cases the jurisdiction of a justice of the peace is either to discharge the accused or else hold him to answer the felony charged or some other felony (which the evidence may disclose the accused to have committed) within the territorial limits of the county". The Supreme Court of Oklahoma in *Collier v. Territory*, 2 Okl. 444, 37 P. 819 (1894), after reviewing our constitution, statutes and Organic Act, stated, "[c]onstruing all of the statutes together, we hold that justices of the peace have no power to try and determine any criminal action excepting such as they are by specific enactment given power to try and determine". While we recognize that judges of the District Court are not under the same basic jurisdictional infirmity, we continue to apply this limited jurisdiction, pursuant to our present statutory scheme set forth in 22 O.S.1981, § 251 et seq., to the judge of the District Court who acts as examining magistrate at the preliminary examination. *See State v. Gorelick*, 746 P.2d 677 (Okl.Cr. 1987); *Moss v. Hicks*, 738 P.2d 155 (Okl.Cr. 1987); *State v. Benson*, 661 P.2d 908 (Okl. Cr.1983); *State v. Kile*, 250 P.2d 233 (Okl. Cr.1952). It is within this context that we

now must address the issue of the right of pre-trial discovery in a felony criminal case.

■ This Court is continually confronted with issues on appeal relating to compliance with pre-trial discovery within the framework of our criminal procedure. This case presents the pressing need to fill the gaps that currently exist within our statutory framework. As we held in *Inverarity v. Zumwalt*, 97 Okl.Cr. 294, 262 P.2d 725, 730 (1953) "[i]t is fundamental that every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction". *See also Layman v. State*, 355 P.2d 444, 447 (Okl.Cr.1960).

With regard to pre-trial discovery, Justice Marshall, writing for the court in *Wardius v. Oregon*, 412 U.S. 470, 475, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82, 88 (1973), stated "But we do hold that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a "search for truth" so far as defense witnesses are concerned, while maintaining 'poker game' secrecy for its own witnesses".

The United States Supreme Court has applied the concept of open discovery in criminal cases, with protections provided to a defendant as to his constitutional rights, to require a defendant to disclose certain pre-trial information. *See Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), and *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). In *Williams* the Court stated "We conclude, however, as has apparently every other court that has considered the issue, that the privilege against self-incrimination is not violated by a requirement that the defendant give notice of an alibi defense and disclose his alibi witnesses". 399 U.S. at 83, 90 S.Ct. at 1896–97. The Court by way of analogy concluded that it is no different to require pretrial disclosure than to grant a continuance during trial to allow the government an opportunity to investigate. It is merely a matter of timing. In *Taylor* the Court upheld a pre-trial discovery order by the trial judge requiring the defense to provide a list of witnesses before trial.

■ Based upon the foregoing, it is necessary for the proper administration of justice to set forth procedures for meaningful pre-trial discovery for each party in a criminal case. While this Court has previously relied upon the American Bar Association Standards for Criminal Justice relating to pre-trial discovery in establishing the appropriate scope of discovery, *See e.g. Moore v. State*, 740 P.2d 731 (Okl.Cr.1987); *Curtis v. State*, 518 P.2d 1288 (Okl.Cr. 1974); *Wing v. State*, 490 P.2d 1376 (Okl. Cr.1971); and *Stevenson v. State*, 486 P.2d 646 (Okl.Cr.1971), we also look to other authorities, including the Model Penal Code, for guidance. We do not adopt those recommended procedures by reference but draw from them in determining the procedure which should be adopted. The following pre-trial discovery procedure will expedite the trial of criminal cases and will help alleviate the pressing problem of pre-trial disclosure.

We find upon the entry of the bindover order pursuant to 22 O.S.1981, § 264, the District Court is empowered to act upon any pretrial motions, including requests for discovery. Although the assigned District Court judge may issue a discovery order at any stage of the proceedings following the bindover, the most appropriate time is at the formal arraignment. At that time, the judge should enter a written order setting forth discovery, inspection and copying requirements for each party and a time for compliance. All issues relating to discovery will be completed at least ten (10) days prior to trial.

The State shall be required to disclose the following:

1. Upon the request of the defense, the prosecuting attorney shall disclose to defense counsel all of the material and information within the prosecutor's possession or control including but not limited to:

(a) the names and addresses of witnesses, together with their relevant oral, written or recorded statement, or summaries of same;

(b) any written or recorded statements and the substance of any oral statements

made by the accused or made by a codefendant;

(c) any reports or statements made by experts in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons;

(d) any books, papers, documents, photographs, tangible objects, buildings, or places which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belong to the accused;

(e) any record of prior criminal convictions of the defendant, or of any codefendant; and

(f) OSBI or FBI rap sheet/records check on any witness listed by the State or the Defense as a possible witness who will testify at trial.

2. The prosecuting attorney shall disclose to defense counsel any material or information within the prosecutor's possession or control which tends to negate the guilt of the accused as to the offense charged or which would tend to reduce the punishment of the accused.

3. The prosecuting attorney's obligations under this standard extend to material and information in the possession or control of members of the prosecutor's staff and of any others who either regularly report or, with reference to the particular case, have reported to the prosecutor's office.

The Defense shall be required to disclose the following:

1. (a) The names and addresses of witnesses, together with their relevant oral, written or recorded statement, or summaries of same;

(b) the name and address of any witness, other than the defendant, who will be called to show that the defendant was not present at the time and place specified in the information [or indictment], together with the witnesses statement to that fact;

(c) the names and addresses of any witness the defendant will call, other than himself, for testimony relating to any mental disease, mental defect, or other condition bearing upon his mental state at the time the offense was allegedly committed, together with the witnesses statement of that fact, if the statement is redacted by the court to preclude disclosure of privileged communication.

A statement filed under subdivision 1.(a)(b) or (c) is not admissible in evidence at trial. Information obtained as a result of a statement filed under this subdivision is not admissible in evidence at trial except to refute the testimony of a witness whose identity this subdivision requires to be disclosed.

2. Upon the prosecuting attorney's request after the time set by the court, the defendant shall allow him access at any reasonable times and in any reasonable manner to inspect, photograph, copy, or have reasonable tests made upon any book, paper, document, photograph, or tangible object which is within the defendant's possession or control and which:

(a) the defendant intends to offer in evidence, except to the extent that it contains any communication of the defendant; or

(b) is a report or statement as to a physical or mental examination or scientific test or experiment made in connection with the particular case prepared by and relating to the anticipated testimony of a person whom the defendant intends to call as a witness, provided the report or statement is redacted by the court to preclude disclosure of privileged communication.

If the defendant subsequently ascertains that he has possession or control of such a matter, he shall promptly so inform the prosecuting attorney. The fact that the defendant, under this subdivision, has indicated an intent to offer a matter in evidence or to call a person as a witness in not admissible in evidence at trial. Information obtained as a result of disclosure under this subdivision is not admissible in evidence at trial except to refute the matter disclosed. Provided further, that the trial judge shall ensure all discovery orders do not violate the defendant's right against self-incrimination.

The trial court shall be empowered to order the following sanctions for noncompliance:

1. If the prosecuting attorney fails to comply with the discovery order, the court on motion of the defendant or on its own motion shall grant appropriate relief, which may include one or more of the following: requiring the prosecuting attorney to comply, granting the defendant additional time or a continuance, relieving the defendant from making a disclosure required by court pursuant to these rules, prohibiting the prosecuting attorney from introducing specified evidence or calling specified witnesses, and dismissing charges.

2. If the defendant fails to comply with the discovery order, the court on motion of the prosecuting attorney or on its own motion shall grant appropriate relief, which may include one or more of the following: requiring the defendant to comply, granting the prosecuting attorney additional time or a continuance, prohibiting the defendant from introducing specified evidence or calling specified witnesses, and granting a mistrial based on manifest necessity due to the acts of the defendant.

3. The sanctions relating to prohibiting either party from introducing specified evidence or calling a specified witness relates to items or persons required to be disclosed by the court's discovery order and the party against whom the sanction is sought has failed to comply with the order or show good cause as to why the party failed to comply.

4. The discovery order shall not include discovery of legal work product of either attorney which is deemed to include legal research or those portions of records, correspondence, reports, or memoranda which are only the opinions, theories, or conclusions of the attorney or the attorney's legal staff.

These criminal discovery procedures will ensure that our trial procedure will be a process to seek justice by providing the defendant and the State access to appropriate pre-trial discovery material. These procedures are effective as of the date of this order and apply to all cases pending in the district courts of the State of Oklahoma. The provisions of 22 O.S.1981, § 251 et seq. are specific as to the purpose and scope of a preliminary examination. As such, the provisions do not allow this Court to interpret them in such a manner as to approve discovery prior to preliminary examination. *See Bookman v. State*, 661 P.2d 909 (Okl. Cr.1983); *Stafford v. State*, 595 P.2d 797 (Okl.Cr.1979). Therefore, this Application for Writ of Mandamus must be DENIED.

IT IS SO ORDERED.

/s/ Ed Parks
ED PARKS,
Presiding Judge

/s/ James F. Lane
JAMES F. LANE,
Vice Presiding Judge
concurring in part/
dissenting in part.

/s/ Tom Brett
TOM BRETT,
Judge
Join in Judge Lane's
concurring in part/
dissenting in part.

/s/ Gary L. Lumpkin
GARY L. LUMPKIN,
Judge.

/s/ Charles A. Johnson
CHARLES A. JOHNSON,
Judge.

LANE, Vice–Presiding Judge, concurs in part/dissents in part:

I concur with the majority's statement that the current state of our procedural law does not permit discovery prior to the preliminary examination. However, I feel compelled to dissent to the rest of the Order.

I would first point out that the question of what is discoverable is not properly before us. In the instant matter, the trial judge, acting as magistrate, ruled that she could not require the State to make certain disclosures prior to a bind over order. That and only that order is before us. Questions of what is discoverable are not raised.

In the first part of the Order, the majority relies on historic procedure in determining that pre-arraignment discovery is not authorized and then ignores historical precedence on discovery issues and in effect creates a criminal discovery code. In

this "code", the majority sets forth items discoverable by the defendant that have in the most part already been approved by this Court. However, for the first time in Oklahoma judicial history, it requires the defendant to disclose many items that heretofore have not been discoverable by the State and designates sanctions to be imposed *if either party fails to follow the rules set out.* I believe that this is a matter to be addressed by the legislative branch of our government, not the judiciary.

Contrary to the above expressions, I applaud the majority in their philosophy. It is my personal view that more discovery in criminal cases is desirable. I believe that mandating more discovery and permitting discovery even before preliminary examination will cause more cases to be settled and thus, promote judicial economy. However, I do not believe that we have the authority to make the changes necessary to reach the desired goal. I would commend the legislature to address these problems.