## HOLCOMB v. STATE.

No. A-11452. Jan. 2, 1952.

(239 P. 2d 806.)

Bryan Billings Woodward, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, J. Ted Olen Holcomb was charged by an information filed in the county court of Woodward county with the crime of driving an automobile on the public highway while under the influence of intoxicating liquor; was tried; convicted; and pursuant to the verdict of the jury was sentenced to serve three months in the county jail and pay a fine of $200 and costs; and has appealed.

There are four assignments of error presented in the brief of defendant and all of them are meritorious. Before separately discussing these assignments we set forth a summary of the evidence.

Jim Holland, a highway patrolman, testified that on November 13, 1949, he was driving in his patrol car making an emergency call when he drove up behind a car being driven by this defendant on highway 270 about four miles southeast of Fort Supply. He saw the defendant's car weaving across the road. The patrolman sounded his siren, the defendant pulled his car off on the right-hand side of the road on the shoulder, and stopped. Holland and his son-in-law, Richard Weidner, who was accompanying Holland in the patrol car, each testified that defendant staggered when he got out of the car, that his speech was thick, that he had the odor of alcohol on his breath, and that in their opinion he was intoxicated.

Two men, Johnny Biggs and Joe Wessel, who were with the defendant, were taken together with defendant to the courthouse at Woodward, where Wessel and Biggs were not detained because they were not intoxicated, but the defendant was placed in the county jail.

Claude Wood, Jailer of Woodward county, testified that defendant was brought to the courthouse and that his speech was thick and he staggered a couple of times climbing the stairs to the jail; that in the opinion of the witness he was drunk. About an hour after he had been placed in jail his attorney came up to see him. At that time the defendant seemed to be sober. When the defendant was placed in jail he told Mr. Biggs to tell his lawyer to come to the courthouse.

Johnny Biggs testified for the state that he met defendant and Wessel in Woodward about 9:30 a.m.: that Wessel had four cans of beer and the three of them took it to Boiling Springs and drank it. They returned to Woodward where defendant went to Ray Smith's house and talked to him for a few minutes. They then left there about 11:00 a.m. and went to the air base and then on to Fort Supply. Defendant had only drunk one can of beer. They went to Smith's tavern at Fort Supply and drank two bottles of beer apiece while they were there. They then left Smith's tavern and started returning to Woodward, when they were stopped by the highway patrolman. The patrolman came over the hill and sounded his siren and all three of them looked back. Defendant may have "bobbled" his car when he looked back. Defendant was driving the car but was not under the influence of intoxicating liquor. The patrolman did not take hold of defendant and defendant walked to the patrolman's car without assistance. Neither he nor Wessel were arrested although both had had more to drink than defendant.

On behalf of defendant, Orville D. Brown, a druggist, and Charley Oliver, a merchant of Woodward, testified that defendant had a good reputation in the community where he resided.

Ray A. Smith testified that defendant came to his house in Woodward about 10:45 and talked to him fifteen or twenty minutes, and he saw no indication at that time that defendant had ever been drinking.

Mae Meyers testified she saw defendant at John Smith's place at Supply about noon and saw him drink a bottle of beer; that she observed his actions and appearance and that in her opinion he was not under the influence of intoxicating liquor.

The defendant testified in his own behalf and his testimony was substantially the same as that given by the witness Biggs, who testified for the state. He further testified that he limped when he walked for the reason that during the tornado which struck Woodward about two years previously he suffered a broken leg. He was allowed to pull up his trouser's leg and show the jury the scars on his leg which were left at the time he sustained the injury. He admitted that at the time he was placed in the jail he stumbled going up the stairs and stated that he could not climb stairs with his crippled leg without generally stumbling during the process.

In rebuttal the state showed by the highway patrolman that the defendant's reputation for being a law-abiding citizen was bad, and also Del Hawkins, city officer of Woodward, testified that his reputation for being a law-abiding and sober citizen was bad.

The first assignment of error is the proposition that the court erred in refusing the defendant's requested instruction upon the issue of defendant's character. The record discloses that counsel for defendant presented to the court several requested instructions. One of them was on the issue of defendant's character, which the court refused to give. He did not give any instruction at all pertaining to the issue of good character which had been injected into the trial by the witnesses for defendant. This was error. Although the state introduced witnesses who testified that defendant's reputation was bad in rebuttal to the evidence introduced on behalf of the defendant, yet the question of good character was presented by the evidence, and under such circumstances a general instruction upon the subject of character, such as was requested by the defendant, should have been given. Where the character of the defendant became an issue in the case the jury should have had the benefit of a general instruction on character for their guidance in their determination of the case. This case is not so one sided or the proof of defendant's guilt so overwhelming that we can say that this error was harmless. In many cases where character evidence has been introduced and the court failed to give an instruction on the character evidence, we have held that such error was harmless principally because, as related in Holmes v. State, 6 Okla. Cr. 541, 119 P. 430, 120 P. 300, the evidence of defendant entirely destroyed the testimony as to the good character. The rule to follow was set forth in the early case of Morris v. Territory, 1 Okla. Cr. 617, 99 P. 760, 761, 101 P. 111, wherein this court held:

"The better and safe practice is for trial courts, when evidence of the good character of the defendant is proper and has been introduced, to instruct the jury upon this issue.

"In instructing on character the court should exercise care not to trench upon the province of the jury. All that is necessary for the court to do is to inform the jury that they may give to evidence of character such weight as they may deem proper in connection with all the other testimony in the case, and the doctrine of reasonable doubt."

This error of the court, standing alone, might not be sufficient to justify a reversal of the conviction because the evidence on the question of character was as much against the defendant as for him. However, when considered in connection with the other assignments of error, we are convinced that the cumulation of errors require reversal of the conviction.

It is contended that the trial judge was guilty of prejudicial misconduct which deprived the defendant of a fair and impartial trial. In this connection it is insisted that the trial court repeatedly examined witnesses and that in examining witnesses for the state he would do so in such a manner as to indicate his belief in the truthfulness of the testimony, and that in examining witnesses for the defendant he would do so in such a manner as to indicate his disbelief in the truthfulness of their testimony. The record sustains this contention. The county attorney did an excellent job of presenting the state's case and the record does not disclose that he needed any assistance from the court in his examination of the state's witnesses. Notwithstanding this, the record discloses that the court interrupted defense counsel's cross-examination of the state's witness Weidner and asked him several leading questions over objection of counsel for defendant, which served to emphasize the state's side of the case. The court repeated the same tactics by interrupting defense counsel's cross-examination of the state's witness Wood, which questions were evidently designed to develop testimony against the defendant by attempting to show that his claim, that his manner of walking was due to a previous injury to his leg, was false. Again when the state's witness Biggs was being cross-examined the court interrupted to ask him a series of questions. This witness was favorable to the defendant and when he did not respond to the leading questions asked by the court, the court ended his interrogation by stating, "You had been drinking quite a bit yourself, had you not?" Twice in the interrogation of the witness Biggs, when the answers of the witness were, "I do not think so", the court responded, "You do not know though." Again the court demonstrated his partisanship when Orville Brown testified on behalf of the defendant as to the defendant's good character. He asked the witness, who was a druggist in Woodward, the following questions:

"By the Court: How did you become acquainted with his general reputation, did you talk to people about it? A. Just knew him when he came into the store. By the Court: Heard other people say what they thought? A. I do not remember talking to many, but everyone seemed to like Ted. By the Court: Are you acquainted with his general reputation in this community? A. Yes, I think so. By the Court: Who did you hear speak of it? A. I have heard Charley Oliver speak about him for one and Fred McDonald, when I took over the store, he told me about most of the customers. By the Court: About their financial ability—did you talk about his general reputation for morality and truth and so-forth, or just in a business way? A. I think it included it generally, I took it that way."

The comment of the court wherein he stated, "About their financial ability", was evidently purposely made to discredit the witness or to lessen the effect of his answers on the jury.

It might be noted that while the court subjected the character witness of the defendant to this vigorous cross-examination, he did not ask any question at all of the character witnesses placed on the witness stand in rebuttal by the state. This unequal treatment of the witnesses probably created an impression with the jury that the court was convinced that the defendant was guilty.

Furthermore, in the closing argument of the county attorney, while the prosecutor was making an unfair argument, as will be hereinafter discussed, the trial court showed his interest in the case by rebuking counsel for defendant for objecting to the improper argument. When counsel for defendant made his objection to the argument as improper and prejudicial and moved that it be excluded, the court responded, "Go ahead. Don't interrupt and heckle him, he didn't interrupt you".

In Dean v. State, 54 Okla. Cr. 384, 22 P. 2d 621, this court stated:

"Trial courts cannot legally indicate their opinion, either expressly or impliedly, intentionally or otherwise, as to the credibility of any witness, or as to

the truth of any fact in issue. The whole matter of the finding of the facts in the case must be left entirely to the jury, without suggestion or leading by the court."

In Bramble v. State, 37 Okla. Cr. 35, 255 P. 1104, it was stated by this court:

"It is further contended that during the course of the trial, the trial judge on several occasions manifested hostility toward defendant and his counsel and made prejudicial comments in the presence of the jury. This contention appears to be sustained by the record. We will not set out the various remarks made by the court, but, from the trend of his cross-examination of defendant and his witnesses, the jury must have believed he was convinced of defendant's guilt. A defendant, whether guilty or innocent, has a constitutional right to have a fair trial. The courts are not partisan of the state nor of an accused. The trial judge, of course, is not a mere umpire, but should control the proceedings before him, but in doing so should treat both sides with equal fairness and impartiality. Because of the position occupied, jurors naturally are easily influenced by any statement by a trial judge, or by the manner in which he treats a defendant or his counsel. He should refrain from statements or comments on the evidence, or concerning the parties or witnesses, from which the jury might learn his views as to the credibility of the witnesses or the merits of the case."

In Garrett v. State, 74 Okla. Cr. 78, 123 P. 2d 283, 284, this court stated:

"It is not to shield the guilty, but to protect the innocent, that courts are steadfast in upholding the forms and rules of law by which it may be lawfully determined who are guilty."

In the body of the opinion it is stated:

"A fair trial is a legal trial, or one conducted in all material things in substantial conformity to law. The state does not expect and will not tolerate the use of any unfair means or methods to secure the conviction of one charged with crime. If a conviction of the defendant cannot be had fairly, then the state does not ask for a conviction, because such a conviction would be tainted with, if not founded upon, injustice and wrong.

"The trial judge is as much a judge for the defendant as for the state, and is supposed to sit fairly and impartially on the rights between the state on the one side and the defendant on the other. The court should be very careful to refrain from saying anything which might convey to the jury the impression that the court had an opinion as to the guilt or innocence of the defendant, or as to the credibility of a witness. Under our system of criminal jurisprudence, the jury are the exclusive judges of the weight and credibility to be given to the testimony of a witness. When the trial court reprimanded defendant's counsel in the presence of the jury, it may have had great influence on the jury in returning the verdict that it did, as jurors generally regard the presiding judge with great respect and give much weight to his expressions and opinions."

It is further contended that the county attorney was guilty of misconduct in his argument to the jury. The entire argument of the county attorney is included in the record. Counsel for defendant objected and excepted to a portion of this argument. A part of the argument to which objection was made is contained in the following excerpts:

By county attorney:

" * * * The State has offered testimony, most of it, practically all of it, was given by officers, men whose duty it is to uphold the law, to protect your rights and your safety. Mr. Holland's duty is to patrol the highways of this state in trying to prevent drunk drivers, such as this man had been proven to be, from driving on the roads and endangering your lives, killing your children * * *."

By county attorney:

"Gentlemen, you read the newspapers and you know of your own knowledge about the dozens of drunk drivers being permitted to go at large. * * *"

By county attorney:

" * * * He is not charged with having consumed so many bottles of beer, he is charged with operating a motor vehicle while under the influence of intoxicating liquor on the highways of this state, jeopardizing your life and my life and your children's life * * *."

While we are constantly stating that counsel for the state and defendant should be given great latitude and a wide freedom of expression in presenting their arguments, still we have never upheld arguments where counsel goes outside of the record and makes statements for the sole purpose of appealing to the passion and prejudice of the jurors. The statement of the county attorney to the jury about what they had read in the newspapers about "dozens of drunk drivers being permitted to go at large", and his statement that Mr. Holland, the highway patrolman, was out on the highway, "trying to prevent drunken drivers, such as the defendant, from driving on the roads, endangering your lives, and killing your children", while not as objectionable as the reference to the newspaper stories, was still unjustified from the evidence in the case, since no accident was involved and no one was injured. The county attorney also said: "It would seem that we might as well take the statute off the books and say there it is boys, have at it, get out here and kill them, do as you please, because nobody is going to stop you." The county attorney's repeated reference to killing little children and killing people could only serve to create passion and prejudice on the part of the jury against the defendant. The fact that the jury gave the defendant three months in the county jail and a fine of two hundred dollars when it was his first offense, and there was no accident involved and the facts were very much disputed as to the guilt of the defendant, would indicate that the improper argument had its effect on the jury.

We do not believe that the errors complained of can be cured by simply modifying the judgment and sentence rendered against the defendant. He has been denied his constitutional right to a fair and impartial trial.

For the reasons herein set forth, the judgment and sentence of the County Court of Woodward County is reversed and the cause is remanded with instructions to again try the accused for this offense.

BRETT, P. J., concurs.