Jesse Eugene GLAZIER,
Appellant,

v.

The STATE of Oklahoma,
Appellee.

No. F–73–26.

Court of Criminal Appeals of Oklahoma.
Sept. 6, 1973.

Bruce W. Gambill, Pawhuska, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Charles P. Rainbolt, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Jesse Eugene Glazier, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Osage County, Case No. CRF–72–88, for the offense of Robbery with Firearms, After Former Conviction of a Felony, his punishment was fixed at a term of not less than fifteen (15) nor more than forty-five (45) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial John Blakely testified that on January 4, 1972, he was employed as a

pharmacist and manager of the Med-X Store at 802 North Osage Drive; that at approximately 10:30 a. m. he was working at the prescription counter when a person, whom he identified in court as defendant, pointed a gun at him and demanded drugs. He gathered together certain drugs and handed them to the defendant. The defendant advised him to "just stay put" and left the store. He testified that he observed the defendant between three or four minutes. On cross-examination he testified that he gave a description of the defendant as a Negro male, about six feet tall, about one hundred and ninety pounds. He further testified that the defendant did not have any manifestations of having had the flu or a cold.

Mrs. Charles Banfield testified she was shopping in the drug store on the morning in question. She heard someone say "pink, pink" over and over again. She then remembered that she was wearing a pink hood. The person, whom she identified in court as defendant, said "You take one more step I'm going to shoot you dead." (Tr. 45) She walked back to where the defendant was standing, waving a gun, until he told her where to stand. She testified that she observed the defendant for approximately five minutes. In cross-examination she testified that she gave a description to the police that the robber was six foot two and weighed one hundred and fifty pounds. She further testified that the defendant did not appear to have any symptoms of having the flu or a cold.

Nan Ubieta testified that she was working in the drug store on the morning in question; that sometime between 10:00 a. m. and 10:30 a. m. a man, whom she identified in court as defendant, stuck a gun in her face and told her to give him the money out of the cash register. She complied with his order and was then ordered to go to the back of the store. Defendant accompanied her to the back of the store and pointed the gun at John Blakely, demanding drugs. She testified that she observed defendant for approximately five to six minutes. Defendant, after getting the

drugs, said that if anyone put their head out of the front door for at least two minutes, he would shoot them. On cross-examination she testified that she gave a description to the police that the person was "about six feet tall, maybe a little taller, he had—I described the clothes he had on, I told them, that I thought he weighed about a hundred and thirty or thirty-five pounds, but I wasn't sure, I'm not good on weight." (Tr. 85)

For the defendant, Loretta Glazier, the defendant's mother, testified that several days after Christmas defendant caught the flu. He stayed in bed at her home until sometime around the 7th or 8th of January. During this period of time, his eyes were watering and he sniffled from the nose. She further testified that the defendant had worn a mustache for as long as she could remember. (All of the State's witnesses testified that defendant was clean-shaven.)

Kenneth Reed testified that he visited in Tulsa over the Christmas Holidays. He went to the Glazier home everyday and defendant was sick in bed during this period of time and had a red nose and eyes.

James Glazier, defendant's brother, testified the defendant stayed in bed about two weeks after Christmas with the flu; that defendant's eyes were red and he had a "sniff" nose.

Ray Smith testified that he was employed as a taxicab driver and that in the latter part of December he took defendant's mother to get some medicine for him. He went to the Glazier residence on either January 3 or 4 and talked to the defendant. Defendant's eyes were red amd his nose was running.

Glen Carol Holme, defendant's girlfriend, testified that she helped take care of the defendant during the period of time he had the flu; that defendant did not leave his mother's house until January 7 or 8.

In rebuttal John Blakely was recalled and testified that several days after the robbery he was shown five or six pictures of black males by Sergeant Larry Johnson;

that neither Mrs. Banfield nor Mrs. Ubieta were present when he examined the pictures. He picked out the picture of the defendant as the robber.

Mrs. Banfield was recalled in rebuttal and testified that sometime in February or March she was shown approximately twenty-five pictures by a Tulsa County Deputy; that neither Mrs. Ubieta nor Mr. Blakely were present at the time she examined the pictures. She testified that she picked out the picture of the defendant as the robber.

Mrs. Ubieta was recalled in rebuttal and testified that approximately four to six weeks after the robbery, she was shown seven or eight pictures by Detective Johnson; that the pictures were all of young, black males and that neither Mr. Blakely nor Mrs. Banfield were present at the time of the examination. She testified that she picked out the picture of the defendant as the robber.

Detective Larry Johnson testifed that on February 2, 1972, he showed eleven pictures of black males to Mrs. Banfield. Mrs. Banfield identified the picture of the defendant. He further testified that he showed the same eleven pictures to Mrs. Ubieta and Mr. Blakely at different times and that each of them picked out the picture of the defendant; that on February 3, 1972, he had a conversation with the defendant at the Tulsa Police Department. He advised the defendant of his Miranda rights and informed defendant that he had been identified as being the robber. Defendant stated "Man, when did that robbery happen." He informed the defendant of the date wherein the defendant stated "I couldn't have pulled that robbery because I wasn't even in town at that time."

■ The first two propositions assert that testimony of identification by picture and lineup was error and prejudicial. In dealing with a similar proposition in the recent case of Hill v. State, Okl.Cr., 500 P. 2d 1075, Judge Simms, in a specially concurring opinion, stated:

"Initially, we feel most strongly that testimony of a victim concerning a pretrial identification is not only material, but most competent for corroboration. It has been recognized that prior identification of an accused is more reliable than a later courtroom identification for the reason that it is closer to the crime in point of time, thus affording less opportunity for fading or deterioration of the victim's memory or changes in the accused's appearance.

"Further, it cannot be said that the defendant would be precluded from showing, or proving, that the victim was unable to identify the defendant as the perpetrator at some previous trial confrontation, therefore, the state should have the same opportunity. The sword, if you will, of prior extra-judicial identification must cut both ways.

"This is not to say the entire gamut of extra-judicial identification activity is open and available to the prosecution. In our view, competent original testimony of the identifier, AFTER, and only after, the in-court identification has been made in such fashion as to satisfy the requirements of Wade [1] and Thompson v. State, Okl.Cr., 438 P. 2d 287, would include testimony to the effect that the identifier at a particular day, place, and time or times, had occasion to see, recognize and identify the defendant as the person who committed the crime.

"Such testimony should not include all of the minute details and possible prejudicial circumstances under which the identification was made. This matter is reserved for cross-examination, the pre-identification evidentiary hearing and rebuttal. Such testimony should also, as we indicated above, be limited to the identifier and should not be extended to any third persons present at the identification. *The testimony of third persons again should be relegated to rebuttal and evidentiary hearing status.*" (Emphasis added)

1. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

We therefore find these propositions to be without merit.

The third proposition contends that the taking of notes by jurors when called to the attention of trial court prior to verdict is reversible error. The record reflects that at the conclusion of the reception of the evidence, it was observed that two of the jurors were taking notes concerning the testimony. Defendant timely moved for a mistrial which was overruled by the trial court. The trial court required the jurors to surrender their notes to the bailiff to be returned to them after the trial. Defendant cites as authority Cheek v. State, 35 Ind. 492 wherein the Indiana court held that a new trial should be granted if, after noticing the juror taking notes, he persists after instructions to desist are given, the court observing that note taking is calculated to divert the attention of the jurors from the evidence. The Attorney General cites as authority Omaha Fire Insurance Company v. Crighton, 50 Neb. 314, 69 N.W. 766 (1897) wherein the Nebraska court held that it was within the discretion of the trial court in permitting jurors to make notes during the progress of the trial. We are of the opinion that it should be within the discretion of the trial court whether or not to permit the jury to take notes. In some cases it would clearly be beneficial to the jury to be able to take notes wherein other cases the taking of notes would be of little benefit. We further observe that under no circumstances should the jury be permitted to take the notes into the jury room while deliberating. See 22 O.S. § 893. In the instant case the jurors were not permitted to take the notes into the jury room. We therefore find this proposition to be without merit.

The fourth proposition contends that the trial court erred in denying defendant's motion for mistrial when it was ascertained that members of the jury were present in another courtroom when two persons were arraigned charged with armed robbery and murder while in the commission of an armed robbery. The record reflects that each of the jurors were individually questioned by the attorneys and the trial court as to whether or not the arraignment prejudiced them in any manner against the defendant. Each juror replied in the negative. We therefore find this proposition to be without merit.

The final proposition asserts that the District Attorney made improper remarks in his closing argument. The record reflects that the District Attorney stated:

"[W]ell, anytime you take a mad dog, let's say, you've got a rabid dog running around out there, he's threatening society. You kill it. Not because you want to kill it, but because it has to be done, to protect society."

The record does not disclose that any objections were interposed to the argument nor were exceptions taken to the court's ruling, nor was a request made for a mistrial and thus there is nothing preserved for consideration by this court. We have previously held that if counsel wishes to reserve the record during closing argument, the State, when an objectionable statement is made by the prosecuting attorney, it should be called to the attention of the court by timely objection, together with a request that the jury be instructed to disregard the improper statement and in the event that the objection is overruled, an exception should be taken to the ruling of the court, preserved and argued in the motion for new trial. When this is not done, the matter cannot be presented for the first time in the motion for new trial and in the petition in error and briefs on appeal. In the event counsel for defendant considers remarks so fundamentally prejudicial that the court cannot, by instructions to the jury, correct such error, counsel for defendant should move for a mistrial and preserve this in the motion for new trial. Overstreet v. State, Okl.Cr., 483 P.2d 738.

In conclusion we observe that on consideration of the entire record and all circumstances, that substantial justice would be served by modifying the judg-

ment and sentence to a term of fifteen (15) years imprisonment and as so modified, the judgment and sentence is affirmed.

BLISS, P. J., and BRETT, J., concur.