**Larry Darnell COHEE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–96–329.**

Court of Criminal Appeals of Oklahoma.

May 22, 1997.

Order Granting Rehearing
for Limited Purpose
July 2, 1997.

Charles J. Migliorino, Burke Mordy, Ardmore, for Defendant at trial.

Dennis Gay, Assistant District Attorney, Ardmore, for State at trial.

W.A. Drew Edmondson, Attorney General, Nathan L. Dills, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

Burke Mordy, Ardmore, for Appellant on appeal.

### *SUMMARY OPINION*

PER CURIAM:

Larry Darnell Cohee was tried by jury and convicted of Unlawful Delivery of a Controlled Substance in violation of 63 O.S.Supp. 1994, § 2–401(B)(1), in the District Court of Carter County, Case No. CF–95–156.   In accordance with the jury's recommendation the Honorable Lee Card sentenced Cohee to

ten years imprisonment and fined him $20,-000. Cohee appeals from this Judgment and Sentence.

After thorough consideration of the entire record before us on appeal including the original record, transcripts, briefs and exhibits of the parties, we have determined that neither reversal nor modification is required under the law and evidence. However, in Proposition I Cohee contends that it was reversible error to permit a juror to take his notes into the jury room. We address Proposition I to clarify the law in this area. In addition, this case raises the more general question of the appropriate role and function of the jury in criminal cases. Across the country, courts are expanding trial techniques and procedures to encourage the development of informed, capable juries.[1] This Court has considered this issue and believes that juries are a valuable resource which can be used more effectively. To that end, we hereby adopt the guidelines attached to this Opinion, and encourage district courts to follow these guidelines when conducting jury trials in criminal cases.

The separate opinions suggest the guidelines are an inappropriate attempt at legislation. We disagree. As our colleagues admit, the guidelines restate settled law or "basic, common sense principles of courtesy and management" and are nothing new. We do not seek to exceed our jurisdiction by creating laws or imposing new duties on trial courts. Rather, we recognize that, although these procedures are within a trial court's discretion, our current piecemeal system may leave courts confused when deciding which procedures to use in any given trial. This case is an excellent example; the practice of juror note-taking is the subject of several published and unpublished cases and trial courts, as here, habitually and needlessly create trial practice based on dicta. Recently, a trial court sought to impanel dual juries in a co-defendant case; this practice is within

the trial court's discretion, but time and money were wasted in appealing that decision to this Court.[2] These examples illustrate a systemic, recurring problem—trial courts simply do not know whether this Court sanctions these trial procedures, and are understandably reluctant to risk reversal by embracing them. In adopting today's guidelines, we attempt to address this widespread problem of trial practice. The restatement of possible trial practices is not an attempt at legislation and addresses the issue before the Court.

■ In Proposition I Cohee claims the trial court erred in allowing a juror to bring his notes from the trial into the jury room during deliberations. We initially note that Cohee agreed on the record to allow jurors to take their notes into the jury room. He has thus waived consideration of all but plain error. In *Glazier v. State*[3] this Court approved the general practice of jurors taking notes during trial. Cohee relies on *Glazier* for his claim that it was plain error for jurors to bring their trial notes with them while deliberating. This reliance is misplaced. Although *Glazier* comments that jurors should not be allowed to take notes into the jury room while deliberating,[4] that comment was dicta. As that opinion made clear, jurors did not take their notes into the jury room, and that issue was not before the *Glazier* court. After reconsidering the issue, we repudiate our dicta in *Glazier*. Use of notes may aid the jury during their deliberations. We find that jurors may benefit from notes in several ways: (1) jurors may follow the proceedings more closely and pay more attention as they take notes for later use; (2) jurors' memories may be more easily and reliably refreshed during deliberations; (3) jurors may make fewer requests to have portions of trial transcript read back during deliberations; and (4) the ability to use their notes may result in increased juror morale and satisfaction.

**1.** *See Jury Trial Innovations* (Munsterman, Hannaford & Whitehead eds. 1997).

**2.** *Harjo et al. v. Turnbull,* Order Denying Petitions for Extraordinary Relief, Nos. P 96–1258, P 96–1266, P 96–1278 (Okl.Cr. January 14, 1997) (not for publication).

**3.** 514 P.2d 87 (Okl.Cr.1973).

**4.** *Glazier,* 514 P.2d at 91.

*Glazier* relied on 22 O.S.1991, § 893, which enumerates material which may be allowed in the jury room during deliberations, including written instructions, the verdict forms, and documentary evidence. That statute says nothing about jury notes. Cohee claims the statute explicitly restricts the materials available to the jury during deliberations. On the contrary, the statute mentions neither physical evidence nor audio nor video recordings, although both are commonly sent back with the jury to aid in their deliberations. The Legislature clearly intended the statute to include material that must be given to the jury, not to limit the materials which the jury may find helpful. We have determined that jurors' notes may aid them in their deliberations. In keeping with our guidelines calling for more effective, informed, and involved juries in criminal cases, we hold that jurors may take their notes into the jury room during deliberations. Cohee's Proposition I is denied.

### Decision

The Judgment and Sentence of the trial court is **AFFIRMED**.

CHAPEL, P.J., STRUBHAR, V.P.J., and JOHNSON, J., concur.

LANE, J., concurs in result.

LUMPKIN, J., concurs in part and dissents in part.

### ATTACHMENT I: GUIDELINES

### GUIDELINES GOVERNING JURIES IN CRIMINAL TRIALS

A. The following Guidelines are set forth for use at the discretion of the trial court, in order to allow for more effective use of juries and strengthen the institution of the jury trial in criminal proceedings.

Guideline 1. Time Management.

A. After the trial court ascertains from counsel how long each case is expected to take the court may, at its discretion, set reasonable time limits on the presentation of evidence or the length of the trial. The trial court may inform the jury how long the trial is expected to last, and should continue to inform the jury of any schedule changes as the trial progresses.

B. The trial court may, at its discretion, ensure that as far as possible the jury is not kept waiting while court and counsel hold hearings on motions, go over instructions, or attend to other out-of-court business. The trial court may arrange its docket to minimize interruptions during criminal trials.

C. In cases with numerous trial exhibits, especially documents, the trial court may, at its discretion, manage and control the documents used at trial. The trial court may (1) assign only one number to each exhibit; (2) provide copies of documents to jurors after their introduction into evidence, and (3) provide an index of admitted exhibits for the jury's use.

D. The trial court may, at its discretion, determine a schedule for jury deliberations and inform the jury of this schedule before deliberations begin.

Comment: The trial court may determine whether the jury will deliberate during the evenings or on weekends, outside normal court hours. The court may ask jurors which schedule they would prefer.

Guideline 2. Impaneling Dual Juries.

In a case where co-defendants are charged, the trial court may, at its discretion, order two juries impaneled, one for each co-defendant. Both juries will be seated in the jury box and the evidence pertaining to both defendants will be presented to both juries simultaneously. Evidence admissible as to one co-defendant shall be presented to that defendant's jury only.

Comment: This procedure is intended to balance, in appropriate cases, defendants' rights to separate trials and speedy trials, and concerns of fairness and judicial economy.

Guideline 3. Jury Questionnaires; Confidentiality.

The trial court may, upon request of the parties and at its discretion, allow a written juror questionnaire to be sent to members of

the jury pool before voir dire commences, and may allow the results of that questionnaire to be used in voir dire. The trial court must examine and approve the questions contained in the questionnaire. The court shall keep all jurors' home and business telephone numbers confidential unless good cause is shown to the court which would require such disclosure.

Guideline 4. Juror Preparation.

A. Immediately after the jury is sworn, the trial court may, at its discretion, instruct the jury concerning its duties and conduct, the order of the proceedings, the procedure by which jurors may submit written questions of witnesses or the court as set forth in subsection (C) of this Guideline, and the elementary legal principles that will govern the proceedings.

Comment: Section 831 of Title 22 O.S.1991 provides the order for criminal trial proceedings, beginning with the reading of the Information. The Court of Criminal Appeals has previously determined that § 831 does not provide exclusive directions for the order of trial, and has promulgated introductory jury instructions to be given after the jury is sworn. Instructions 1–7, 1–8, Oklahoma Uniform Jury Instructions, Criminal (2nd). In addition to these instructions, jurors may be informed of the elements of the offense and affirmative defenses, if any, of which a defendant has given notice. In technical or complicated cases, these instructions may include a glossary of terms or other information which would assist jurors in understanding the evidence. This information may help prepare jurors to understand the issues, determine the facts and weigh evidence as the trial progresses.

B. The court may, at its discretion, instruct the jurors that they may take notes regarding the evidence presented. The court shall provide materials for this purpose. In its discretion, the court may allow documents and exhibits to be included in notebooks after their admission into evidence for juror use during the trial, if the documents and exhib-

its would aid jurors in performing their duties. Jurors shall have access to their notes and notebooks during recesses, discussions and deliberations. After the jury has returned a verdict, the notes shall be collected and destroyed by the bailiff or clerk and such notes shall not be used or referenced in any subsequent proceedings on appeal.

Comment: Jurors may take notes during the proceedings, and trial courts are encouraged to provide notebooks to facilitate juror notetaking. Jurors may take their notes to the jury room to aid in their deliberations. *Cohee v. State*, No. F–96–329 (Okl.Cr.1997).

Comprehensive juror notebooks may significantly assist jurors in understanding and remembering evidence in complex or lengthy cases. Decisions involving the contents of juror notebooks are within the trial court's discretion. A juror notebook provided by the court should include space for individual notes but may include, as appropriate: (1) a copy of the preliminary jury instructions; (2) witnesses' names, photographs, or biographies, where appropriate; (3) copies of documents after their admission into evidence and an index of exhibits; (4) a glossary of technical terms; (5) a copy of the court's final instructions; and (6) space in which jurors may take notes. Any preliminary instructions should be removed and replaced by the final instructions before the jury receives final instructions.

C. The trial court may, at its discretion, instruct jurors that they may submit to the court written questions directed to witnesses or the court. Jurors should be informed (1) any questions directed to witnesses must be in writing and unsigned; (2) counsel will have the opportunity to review and object to such questions outside the presence of the jury; (3) questions will be asked by the court or counsel at the trial court's discretion; (4) jurors should not discuss questions among themselves, but each juror should determine independently if he or she has questions of a witness; and (5) trial Guidelines do not permit some questions to be asked, and jurors should not attach any significance to a ques-

tion's rejection. The trial court may prohibit or limit submission of juror questions.

Comment: Allowing jurors to ask questions encourages active juror participation in the fact-finding process and improves juror comprehension. A juror with a question should give it to the bailiff at recess or signal the bailiff before the witness leaves the witness stand. The bailiff will present the written question to the court. Where appropriate, jury questions may be answered by stipulation or testimony. If the court determines the question calls for inadmissible evidence, the question should be neither read nor answered. This procedure may (1) clarify information and avoid confusion; (2) reveal juror confusion or misconduct; and (3) help jurors remain more alert and focused on the proceedings.

D. The trial court may instruct the jury that it may submit questions to the court during deliberations, and that the court will attempt to answer those questions as fully as the law permits.

Comment: The jury may submit questions during deliberations. The trial court should inform counsel, propose a response, and offer counsel the opportunity to object or suggest a response. The court may either call the jury to the jury box or return a written answer as appropriate. As far as possible consistent with the law, the court's response should attempt to answer the jury's questions using clear and plain language.

E. The trial court may emphasize the importance of using clear and understandable language when addressing the jury.

Guideline 5. Assisting Jurors at Impasse.

If the jury advises the trial court that it has reached an impasse in its deliberations, the court may, in the presence of counsel, inquire of the jurors to determine whether the court and counsel can assist the jurors in their deliberations. The trial court may direct that further proceedings occur as appropriate based on the jurors' response.

Comment: After a jury reports it has reached an impasse, the trial court may give the *Allen* instruction, which encourages the jurors to continue deliberations and reach a verdict. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); OUJI–CR 10–11 (2nd). In particular cases, before giving an *Allen* instruction the trial court may, at its discretion, inquire what issues divide the jury, and offer some assistance if it is legally and practically possible and if jurors, through the foreman, indicate such assistance would help them reach a verdict. The trial court's offer of assistance should not be coercive or suggestive. In order to avoid any chilling effect on deliberations, any individual juror concerns should remain anonymous, and the foreman should present all issues dividing the jury to the trial court. Avenues of assistance which trial court and counsel might pursue include: giving additional instructions or clarifying earlier instructions; directing additional closing argument; and reopening the evidence for limited purposes. This provision is not intended to allow the court or counsel to assist in deliberations, but merely to provide further instruction, argument, or evidence as it may aid the jury, who will then retire to continue deliberation. Under no circumstances should counsel or the court engage in a dialogue with jurors or suggest a resolution to the issue except as permitted within the range of argument. Aiding juries which request help may improve the chances of a verdict and avoid needless mistrials.[5] This procedure should supplement, not replace, the *Allen* instruction.

Guideline 6. Post–Deliberation Procedures.

A. The trial court may thank the jurors for their service. At its discretion, the trial court may regularly survey jurors regarding their responses to jury duty in general and their experiences during this particular trial.

B. In cases exposing jurors to extreme violence, perversion, or other evidence likely to induce substantial juror stress, the trial

**5.** *Jury Trial Innovations* 191 (Munsterman, Hanaford & Whitehead eds. 1997).

court may, at its discretion, meet with the jury immediately after the close of trial. Jurors should have the opportunity to discuss their shared experience as well as individual feelings and reactions. The trial court may advise jurors of the signs and symptoms of stress, and inform jurors about community mental health, counseling and other resources.

C. In cases where jurors express apparently reasonable concerns about the dangers of retaliation for jury service during or after trial, the trial court may, at its discretion, meet with the jury and refer jurors to law enforcement authorities as appropriate.

> Comment: Criminal trials may involve disturbing evidence or be accompanied by threats or remarks from persons connected with parties in the case. Trial courts should be sensitive to these issues, and attempt to address juror concerns or feelings of stress and anxiety by referring jurors to community organizations or law enforcement agencies as appropriate. Trial courts should not take the place of counselors. Trial courts should address these concerns after the jury has completed deliberations and returned its verdict.

D. At its discretion, the trial court may instruct jurors that, after discharge, they are free to discuss the case, but that if jurors do not wish to speak about the case to the court, counsel, the media or the public they need not do so. The trial court may offer to meet with jurors,· thank them personally, and answer general questions as far as the law and judicial ethics permit.

LUMPKIN, Judge, concurs in part, dissents in part.

The great writer H.L. Mencken once observed that "[t]here is always an easy solution to every human problem—neat, plausible, and wrong."[1] If he were that cynical when addressing a solution to a *real* problem, imagine how he would react to a solution to something which is *not* a problem. I concur in the Court's decision to vacate the dicta in *Glazier v. State*, 514 P.2d 87 (Okl.Cr.1973), however I must dissent to the overreaching dicta which is spawned by the "Guidelines" attached to the opinion.

As a trial judge I recognized immediately my role was to adjudicate the issues presented to me. It was not proper for a judge to attempt to create issues where none existed. That principle is even more important on the appellate court. In this case the Court is presented with a proposition of error that alleges "[I]t was reversible error to permit a juror to take his notes into the jury room during deliberations"; no more, no less. *Sua sponte*, without any factual or legal basis in the record, the Court after adjudicating the issue presented flies off on a tangent to embrace a notion of how trial judges should manage their courts and deal with jurors. Clearly the Court exceeds its jurisdiction and envisions itself as the combined houses of the Oklahoma Legislature and the Executive fiat rolled into one. This action not only violates the concept of separation of powers, but also fails to apply the basic understanding of judiciable issues which are subject to the court's action.[2]

---

**1.** Mencken, H.L., "The Divine Afflatus," *A Mencken Chrestomathy*, ch. 25, p. 443 (1949).

**2.** I am aware this Court has in the past issued guidelines on various subjects. But even in those instances, the guidelines have been consistent with adjudicating an issue before this Court; or if the issue were not squarely before the Court, the issue was at least indicative of a systemic, recurring problem. For instance, in *Bruner v. State ex rel. District Court of Oklahoma County*, 581 P.2d 1314, 1315 (Okl.Cr.1978), the Court began with the issue before it: whether, when a defendant had retained counsel, he could still be provided with a trial transcript at State expense. Clearly, the issue affected the appellate jurisdiction of this Court. *See id.* at 1315 ("It is unquestionable that no person can be denied an effective *appeal* solely on the ground of lack of sufficient funds to properly prosecute the appeal." (emphasis added)). *See also id.* at 1315–16 (Noting that the Court had held in previous cases that "one's 'financial inability' to pay for a transcript is a prerequisite to the granting of a transcript at public expense and must be made on a case by case basis. However, while it is true that every defendant's financial condition is unique, we now believe that guidelines would aid the District Courts of this State in ordering trial transcripts prepared at public expense for *appeal* purposes." (emphasis added)). If determining eligibility for a transcript for purposes of appeal does not touch on the appellate jurisdiction of this Court, I don't know what does. In *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979), the Court on rehearing specifically addressed its power to pro-

To a great degree, the "Guidelines" merely restate basic, common sense principles of courtesy and management which trial judges exercise as a matter of course on a daily basis. Yet, the Court seeks to establish "Guidelines" without considering either the effect the violation of any of these "guidelines" might have on the criminal trial proceedings, or the cost of implementation. The

United States Supreme Court painted itself into a corner on the issue of the rights of jurors as we have seen in *Batson*[3] and its progeny. This Court should not begin a journey down that same dark path.[4]

In addition, the suggestions on time management violate prior caselaw regarding the emphasis of some evidence over other evidence. It is a longstanding holding in this

mulgate rules to aid it in its appellate jurisdiction. The Court noted that in establishing the "other crimes" guidelines, "we were responding to a problem of perpetual existence in the trial courts of our state, where it is not uncommon to find the erroneous admission of evidence of crimes other than that for which the defendant is on trial." *Id.* at 775. We then noted that one basis for the rules rested on "constitutional considerations of due process," *id.*, which applied throughout the nation. We also observed that standardization of the use of such evidence assured all defendants equal protection of the laws. *Id.* at 775–76, and would eliminate the "recurring misuse of other crimes at trials in this state." *Id.* at 776. The Court observed that it had exercised its authority "to establish criteria for the constitutional application of a given statute, in aid of our appellate criminal jurisdiction." The Court characterized the interpretation of the statute as a "function of this judicial tribunal," adding "[i]t is the responsibility of this Court to construe the intent of pertinent criminal statutes in the manner in which they should have been implemented in light of constitutional standards." In *Burks,* the Court noted that due process requires a defendant be given notice so he can prepare a defense and adequately confront witnesses. *Id.* The court described what it had done as "further delineat[ing] and clarify[ing] the constitutional application of 12 O.S.Supp.1978, § 2404(B)." It observed that such clarification "does not exceed our jurisdiction, but is in aid or (sic) our appellate jurisdiction," adding that the use of such evidence "has long created problems in the courts of our state." *Id.* Even in *Allen v. District Court of Washington County,* 803 P.2d 1164, 1167 (Okl.Cr.1990), we said we were "continually confronted with issues on appeal relating to compliance with pre-trial discovery within the framework of our criminal procedure," adding the case presented an opportunity to "fill the gaps." We rationalized this by observing that "every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction". *Id.*

In other words, when imposing guidelines on the trial courts, this Court at least had a principled reason for doing so. Here, there is no such reason. This Court rarely—if ever—gets complaints from defendants about the way jurors on their panels were treated. Accordingly, there is no need to step in to correct a problem, because no such problem exists. If this Court is going to

burden the trial courts with additional rules, it must be because they aid us in our jurisdiction, and address a problem before the Court. There must be a reason for imposing additional responsibilities on the courts below, and that reason must be more than we think it would be a keen thing to do.

3. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

4. And it can be a dark path. What happens when a trial court violates this Court's guidelines? Can a defendant seek reversal based on a violation of rights not his own? It would seem such a thing is possible, if the violation is severe enough. *See e.g.,* the line of cases which have descended from *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986): *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (intentional discrimination on the basis of gender by state actors in use of peremptory strikes in jury selection violates equal protection clause); *Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33, (1992) (equal protection clause prohibited defendant from engaging in purposeful discrimination on ground of race); *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (under equal protection clause, criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not defendant and excluded jurors share same race); *Holland v. Illinois,* 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990) (white defendant had standing to object, on "fair cross section" grounds, to prosecutor's use of peremptory challenges to exclude blacks from jury). *See also Ezell v. State,* 909 P.2d 68, 73 (Okl.Cr.1995) (Lumpkin, J., concurring) (concern over focus of case changing to "a juror's right to serve rather than the parties' right to select a jury to try the case," labeling the holding as "an example of reaching out and embracing a novel legal idea which in practice paints the Court into the proverbial corner. The problem is the paint never dries to allow the painter to leave the room."). None of these cases has anything to do with a defendant's right to a fair trial. Even in these cases, however, the Court was able to hang its ruling on some constitutional principle (the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution). That is more than I can say for the guidelines set forth today.

Court that trial judges must remain neutral and should not indicate their opinion as to guilt or innocence in any trial. We have noted that jurors are easily influenced by the conduct and remarks of a trial judge, and the judge should use great care to avoid giving a personal opinion of the weight of the evidence or the guilt or innocence of a defendant. *Allen v. State,* 862 P.2d 487, 489 (Okl. Cr.1993); *Richmond v. State,* 456 P.2d 897, 899–900 (Okl.Cr.1969); *Martin v. State,* 463 P.2d 995, 998 (Okl.Cr.1970); *Megown v. State,* 300 P.2d 673, 678–79 (Okl.Cr.1956); *Robedeaux v. State,* 94 Okl.Cr. 171, 176, 232 P.2d 642, 648 (1951); *Rice v. State,* 93 Okl. Cr. 86, 92, 225 P.2d 186, 189–90 (1950). Indeed, we have reversed on this very issue. *See Harrell v. State,* 85 Okl.Cr. 293, 295, 187 P.2d 676, 677 (1947); *McMahan v. State,* 96 Okl.Cr. 176, 177, 251 P.2d 204, 205 (1952) (judgment and sentence modified due to prejudicial remarks made by trial judge); *Holcomb v. State,* 95 Okl.Cr. 55, 58–59, 239 P.2d 806, 810–11 (1952) (reversal based at least in part on improper conduct of trial judge who, among other things, rebuked defense counsel in front of the jury for making a valid objection). The "Guidelines" give no guidance as to how a trial court is to determine what is "reasonable" in setting limits on the presentation of evidence by a party. By prejudging the importance of evidence and allocating a time period in which it must be presented, does the Court create the potential of giving greater emphasis to some evidence to the exclusion of other evidence? If a jury during deliberations relates its problems to the court, and the court refuses to allow a defendant to put on additional evidence in an attempt to resolve the question in the jurors' minds, could that be construed as limiting the ability of a defendant to present evidence? These are not an all-inclusive list of the problems I foresee coming out of this Court's holding; they are merely examples.

There is nothing wrong with reforms. Often, they are very helpful. Here, however, the Court seeks to apply a reform to problems which do not exist. In this case, it is wise to remember the words of Ralph Waldo Emerson, when he wrote in his *Essays* on history: "Every reform was once a private opinion, and when it shall be a private opinion again it will solve the problem of the age." I am afraid the Court has abandoned its role as the adjudicator of the facts and the law and seeks to play to the ever-changing waves of public opinion. That is not to say, if properly enacted pursuant to the proper authority, some of the "Guidelines" could not assist in the improvement of trial procedure in the District Courts. However, it is not this Court's role to reach out and reshape the world in the Court's perceived better image.

The opinion correctly states the issue of jurors taking notes into the jury room was not before the *Glazier* Court. Here, it is. Appellant agreed to the procedure at trial and the issue is waived for review on appeal. Instead of adjudicating the issue and properly denying it based on that waiver, the Court seeks to justify its extrajudicial action by attempting to fashion a systemic problem where none exists. In doing so, the Court relies on one or two unpublished cases. If a true problem actually existed it would seem this Court would have been required to at least address the issues embraced by this opinion in one published case.

In the famous play-within-a-play scene in *Hamlet,* the melancholy Dane at one point turned to Queen Gertrude and asked her how she enjoyed the play, to which she replied: "The lady protests too much, methinks." Here, methinks the Court is guilty of a similar kind of overreacting. Unfortunately, this is no play.

LANE, Judge, concurs in results.

I concur in the majority's resolution of the issue before this Court in proposition one. The issue of whether jurors may take notes with them into deliberations has been properly decided by condemning the dicta in *Glazier.* However, I would add to the opinion by requiring that jurors' notes be destroyed at the conclusion of the trial so that the notes may not be used to impeach the jury's verdict. *See* 12 O.S.1991, § 2606.

I also agree with many of the concerns expressed by Judge Lumpkin in his separate vote. However, I write specially to voice my own concerns regarding the "Guidelines Governing Juries in Criminal Trials" and to

question this Courts authority to enact such broad "legislation." [1]

The majority attempts to justify these guidelines based on an unsubstantiated conclusion that time and money were wasted in recent interlocutory appeals brought before this Court. There was absolutely no evidence on the record that either time or money was wasted in that appeal procedure. We simply found that the petitioners failed to establish that they were entitled to extraordinary relief. I would hazard a guess that more time and money has been needlessly spent discussing issues that are not properly before us.

The majority condemns trial practice based on dicta, then the majority creates far more dicta than it has condemned. According to Blacks Law Dictionary, *dicta*, or more precisely *obiter dictum*, is an expression in a court's opinion which goes beyond the facts before the court and therefore is an individual view of the author and is not binding in subsequent cases. Blacks Law Dictionary, 5th ed. 408, 409; *Also see American Trailers, Inc. v. Walker*, 526 P.2d 1150, 1154 (Okla. 1974). Clearly the majority intends that these guidelines have precedential value, else why waste time and money in developing them?

The majority also exceeds the jurisdiction of this Court in adopting these guidelines. We are a Court of special, limited jurisdiction. We have exclusive jurisdiction over the appeals of criminal cases. 20 O.S.1991, § 40. We also may issue writs when they are necessary to exercise our original jurisdiction. 20 O.S.1991, § 41. We may also prescribe and promulgate rules for the government of this Court. *Id.* That includes rules for the regulation of practice before this Court. *Denton v. Hunt*, 79 Okl.Cr. 166, 152 P.2d 698, 700 (1944). These guidelines do nothing to regulate or aid us in the exercise of our jurisdiction.

Conversely, these guidelines are more akin to an advisory opinion, except for the fact that no one has asked our opinion about a non-justiciable matter. Even more egregious, the majority has interjected its opinion on matters it has selected on its own accord. If that is not legislation, then we have been remiss in the application of our jurisdiction prior to this time.

> ... unless we are vested with original jurisdiction, all exercise of power must be derived from our appellate jurisdiction, which is the power and the jurisdiction to review and correct those proceedings of inferior courts brought for determination in the manner provided by law.... An advisory opinion does not fall within the Court's original or statutory jurisdiction; neither does it come within its appellate review.

*Matter of L.N.*, 617 P.2d 239, 240 (Okl.Cr. 1980)

Guideline 4(B) is the only item which deals with an issue before us in this case. The majority goes far beyond this issue and uses this case as a springboard into improper judicial legislation. These guidelines open a whole new can of worms, worms that will wiggle and squirm through the most adept hands of jurisprudence.[2]

Guideline 1 allows a judge to set time limits on the presentation of evidence and the overall length of the trial. This guideline further allow judges to manage documentary evidence. Judges already may limit the introduction of evidence which is irrelevant, cumulative, or prejudicial under our evidence code. This does not mean that trial courts may set limits on the presentation of evidence which is relevant. The limitation of evidence and testimony is likely to create a situation where a judge is perceived to be commenting on the evidence. We have historically condemned any action by the trial court that invades the province of the jury. Any word said or deed done by a trial court

---

1. I condemn this type of "judicial legislation" as I have done so in the past. *See Allen v. District Court of Washington County*, 803 P.2d 1164 (Okl. Cr.1990) (Lane, Vice–Presiding Judge, concurs in part/dissents in part).

2. The legislature has seen fit to give us guidelines for the conduct of criminal trials. 22 O.S.1991, § 831–928 set forth the duties of a trial judge and the procedure and order to be followed during a jury trial. Nearly all of these laws were enacted in the Revised Laws of 1910 and most find their origin in the 1887 Criminal Law of Dakota.

which might tend to influence the jury in any respect is forbidden.

Furthermore, courts cannot limit some portions of the trial. 22 O.S.1991, § 831 states that the court "... shall not without the consent of the attorneys limit the time of their arguments." Can it not be said that the limitation of substantive evidence is more harmful than the limitation of argument?

Some of the items in these guidelines, beginning with Guideline 1 allow a judge, in his discretion, to treat jurors with respect. Respect of jurors is not discretionary. Canon 3 of the Code of Judicial Conduct requires that judges be "patient, dignified, and courteous to ... jurors ..." Canon 3(A)(3), *Code of Judicial Conduct*, 5 O.S.1991, Ch. 1, App. 4. There is no need for this Court to rewrite the Judicial Canons.

Guideline 2 permits dual juries. We have already given preliminary approval of this procedure by denying petitions for extraordinary relief where a trial court was intending to implement this procedure.[3] We should not create dicta in this case where the fact situation does not exist for a full examination of the mechanics of a dual jury system. We would be wiser to wait until a fact specific case presents itself so that the dual jury procedure may be properly scrutinized.

The comments to guideline 4(A) allow substantive instructions at the outset of jury trial. This procedure does not comport with 22 O.S.1991, § 831, regarding the order of trial proceedings. The Oklahoma Uniform Jury Instructions for criminal cases contain the relevant introductory instructions that should be given before trial. Instructing on substantive trial issues before all of the evidence has been introduced may lead juries to disregard some of the evidence presented during trial.

Furthermore, if the subsequent evidence does not support the instructions, jurors will be confused and even prejudiced against the party failing to meet the requirements of the instructions. Jurors are likely to ignore new and different substantive instructions given at the close of the evidence. Substantive instructions must conform to the evidence presented at trial. Therefore, it would not be logical to give substantive instructions before evidence is presented.

Guideline 4(B) reiterates the holding of this case, as well as includes the right for jurors to have individual copies of documents and exhibits, photographs and biographies of witnesses. Giving biographies of witnesses before they testify raises the problem of commenting on the credibility of witnesses before their credibility is placed in issue.

Furthermore, there is a great expense in giving jurors individual copies of this information. I suppose that the court fund will be responsible for this expense or else only rich defendants and the State will be allowed to provide individual copies of exhibits.

Guideline 4(C) allows jurors to direct questions to the witnesses through the judge. We have already ruled on this issue when it was properly before us. *See Freeman v. State*, 876 P.2d 283, 288–89 (Okl.Cr.1994). I see no need to "codify" our prior decisions.

Guideline 4(D) allows written responses to questions from the jury during deliberations. 22 O.S.1991, § 894, specifically covers informing jurors on a point of law after they have retired for deliberations. Jurors are required to be brought into the courtroom. Although we have held that substantial compliance is sufficient, that this requirement may be waived and that a violation may constitute harmless error, we have consistently held that the failure to follow this mandatory statute constitutes error. *See Walker v. State*, 887 P.2d 301, 312 (Okl.Cr. 1994). Clearly, the majority is rewriting statutory law in this guideline.

Guideline 5 makes a drastic change in the law of deadlocked juries. Not since the United States Supreme Courts decision in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), has there been such an expansion of the law. This guideline permits the court and counsel to assist in deliberations. We might as well do away with the sequestered jury system all together and let the judge and counsel invade the jury room and partake in the deliberations.

---

3. See note 2 of the majority's opinion.

This guideline goes too far in invading the sanctity of jury deliberations. It will have a chilling effect on jury deliberations by exposing individual juror opinions to outside judgments, regardless of the anonymity of the proceeding.

This procedure allows for the giving of additional instructions, directing additional closing argument, and the reopening of the evidence. This procedure may place undue emphasis on certain portions of the evidence or instructions. Allowing additional argument places the court and attorneys in the midst of jury deliberations. Once a case has been submitted for deliberation, any further argument, evidence and instruction runs the risk of invading the province of the jury. We have to realize that in some cases the jurors are never going to agree on a verdict. Anything more than the standard approved *Allen* instruction is likely to create an unduly coercive process.

Guideline 6 is a waste of paper. Trial courts are fools if they don't thank the jurors for their service. The post-trial interview process is something that has nothing to do with criminal appellate procedure and, therefore, we have no business even advising trial courts about this procedure. Furthermore, are we allowing judges the authority to become counselors and resource managers for jurors? This new role could break down the cloak of judicial immunity.

Nothing in our Constitution nor our statutes allows this Court to enact such broad legislation. These guidelines which are intended to pre-empt needless appeals will have an opposite effect by creating more issues for appellate review. We would do well to limit ourselves to matters which are justiciable in this Court or which have an impact on criminal appellate procedure.

### ORDER GRANTING PETITION FOR REHEARING, AFFIRMING JUDGMENT AND SENTENCE, AND DIRECTING ISSUANCE OF MANDATE

PER CURIAM.

Appellant Larry Darnell Cohee, through his attorney of record, has timely filed with this Court a Petition for Rehearing. In it, Appellant points out that this Court in *Cohee v. State*, 942 P.2d 211 (Okl.Cr.1997), failed to address his second proposition, that the trial court should have granted a mistrial because of the evidentiary harpoon that was hurled during the testimony of Agent Glen Stubbs.

Although this proposition was considered by this Court in an internal memorandum, it appears this Court failed to include the disposition of that proposition in its published opinion. Accordingly, Appellant is correct, and we hereby **GRANT** rehearing for the limited purpose of addressing his second proposition.

■ We find relief is warranted. Stubbs was an agent for the Oklahoma Bureau of Narcotics. During direct examination, the agent testified their target was Jesse Cohee, who apparently worked in the garage with Appellant. During cross-examination, defense counsel re-opened the subject by attempting to impeach Stubbs with his own report. The report stated the confidential informant said he could buy crack from Appellant. When defense counsel pointed this out, he asked if the original target was Jesse. The agent replied "Jesse Cohee was our original target, but anytime we send an informant by Mr. Cohee's garage, he has always been the number one target." Defense counsel objected, requesting a mistrial, prompting the trial court to ask him: "What did you think he was going to do, Mr. Migliorino?" and ruled defense counsel had opened the door.

We agree. *See Brannon v. State*, 670 P.2d 601, 604 (Okl.Cr.1983). *See also Davis v. State*, 885 P.2d 665, 668 (Okl.Cr.1994); *Goodwin v. State*, 743 P.2d 1101, 1103–04 (Okl.Cr. 1987); *Boyd v. State*, 743 P.2d 658, 662 (Okl. Cr.1987); *Thomas v. State*, 741 P.2d 482, 485–86 (Okl.Cr.1987); *Grizzle v. State*, 707 P.2d 1210, 1214 (Okl.Cr.1985); *Vaughn v. State*, 697 P.2d 963, 968 (Okl.Cr.1985).

Additionally, the agent's statement could be interpreted in a way other than Appellant claims: the pronoun "he" could be as easily be interpreted as meaning Jesse.

Accordingly, we find no merit to Appellant's second proposition of error.

In his Petition, Appellant also claims this Court erred when it said Appellant did not agree to allow the jurors to take notes into the jury room during deliberations. We disagree. We believe the record clearly shows his attorney agreed the jurors could take their notes into deliberations. In the course of the trial, the following bench conference occurred:

THE COURT: I forgot to mention that over the noon hour, Mrs. Looper [bailiff] got a note from Mr. Jones, who's one of the jurors. I'll let youall read it.

. . . .

THE COURT: As far as taking notes, I don't have any objection.

MR. GAY [prosecutor]: I think several of them are doing that.

THE COURT: They've been going it the whole day.

MR. MIGLIORINO [defense counsel]: You mean in here, taking them back, or taking notes here?

THE COURT: They've been taking notes. *I don't have any objection to them taking them to the jury room, if anybody else does, say so.*

MR. GAY: I don't have any objection.

MR. MIGLIORINO: *No, Your Honor.*

THE COURT: Okay. I'm gonna—counsel, I'm gonna deliver this to—I'm gonna mark this Court's Exhibit 1 and give it to the court reporter.

(Tr. 111–12)(emphasis added). Appellant failed to object at trial, and he is bound by his attorney's decision.

The Judgment and Sentence of the District Court is **AFFIRMED**. The Clerk of this Court is directed to issue the mandate forthwith.

**IT IS SO ORDERED.**