**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 7 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JAMES LLOYD BENSON,

Petitioner-Appellant,

v.

TOM C. MARTIN; ATTORNEY
GENERAL OF THE STATE OF
OKLAHOMA,

Respondents-Appellees.

No. 99-7117
(D.C. No. 97-CV-582-S)
(E.D. Okla.)

**ORDER AND JUDGMENT** *

Before **BRISCOE** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

James Lloyd Benson appeals from the district court's order denying his petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254. We previously granted a certificate of appealability (COA) on two of the issues he raises, *see id.* § 2253(c), and we now affirm.

Benson was convicted after a jury trial of raping and sodomizing a twelve-year-old girl. The victim testified that Benson picked her up from her home and took her to a secluded well site where he sexually assaulted her.

The victim claimed that Benson ejaculated and made her wipe herself with tissues. Investigators found tissues on the ground at the well site; forensic tests of these tissues revealed blood but no trace of seminal fluid. Investigators also found a birthday card and a business card belonging to Benson's wife at the scene.

Prior to trial, Benson's counsel filed a motion for pre-trial discovery pursuant to *Allen v. District Court*, 803 P.2d 1164 (Okla. Crim. App. 1990). Benson was informed on September 10, 1993, that the case had been set for jury trial ten days later, on September 20, 1993. Counsel had not yet received a response to his discovery motion, so he filed a motion for continuance of the trial on September 13, 1993. This motion was heard on the scheduled day of trial, September 20.

The state district court found, however, that Benson's counsel had failed to file a supporting affidavit with the motion for continuance, as required by the court rules. It denied the motion for continuance, but reset the trial for three days later, on September 23, 1993.

Benson went to trial without his motion for discovery being granted. He did not receive summaries of witnesses' proposed testimony in advance of trial, as required by *Allen*. For this reason, he interposed an objection to the testimony of all prosecution witnesses.

The prosecution maintained an open file policy, and to that extent, counsel received some information concerning the state's case prior to trial. Benson claims, however, that his counsel was surprised at trial in several respects: by use of a records custodian to introduce the victim's medical records; by testimony from Benson's wife that a birthday card found at the scene belonged to her; by evidence that the victim had pubic hair; and by testimony that the tires of his truck matched tracks found at the scene.

This court previously granted Benson a COA on two issues: (1) Whether a lack of adequate discovery rendered his trial fundamentally unfair; and (2) whether his trial counsel was constitutionally ineffective in failing to file the required affidavit with his request for a continuance of Benson's trial. We denied his request for a COA pertaining to other issues he raised. In assessing Benson's

claims, "[w]e review the district court's legal conclusions de novo and its factual findings under the clearly erroneous standard." *Ross v. Ward*, 165 F.3d 793, 798 (10th Cir. 1999).

I. Lack of adequate pre-trial discovery

Benson raised this issue on direct appeal in state court. An emergency panel of the Oklahoma Court of Criminal Appeals concluded that there had been substantial compliance with *Allen*. It did not address the constitutional aspect of the discovery claim, however. Benson petitioned for en banc review from the Court of Criminal Appeals. In denying en banc review, the court concluded that *Allen* had been violated. It further held, however: (1) that the violation did not rise to the level of a violation of the federal constitution; and (2) that the harmfulness of the error under state law could not be determined because Benson's appellate attorney had failed to designate a proper record. Benson now argues that the violation (specifically, the failure to provide him with pre-trial summaries of the witnesses' expected testimony) did rise to a denial of due process. He also contends that his attorney was constitutionally ineffective in failing to designate a proper record for state court review.

A. Denial of Due Process

It is fundamental that we do not grant habeas relief for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). If the state court did not follow its

own rules, this error will not give rise to habeas relief unless failure to follow the rules also constituted a violation of due process guaranteed by the federal constitution. *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). A petitioner who relies upon the *Hicks* due process analysis carries a heavy burden. He must show that "the deprivation occasioned by the state's failure to follow its own law [is] arbitrary in the constitutional sense; that is, it must shock the judicial conscience." *Aycox v. Lytle*, 196 F.3d 1174, 1180 (10th Cir. 1999) (quotation omitted).

As mentioned, the state court determined that this claim did not rise to the level of a constitutional violation. This decision is binding on us unless it is contrary to clearly established federal law or is based upon an unreasonable determination of the facts. 28 U.S.C. § 2254(d).

### 1. Use of records custodian

Benson complains that he was surprised when the prosecution used a custodial of medical records, rather than the doctor who actually performed the medical examination, to introduce the records of the rape examination conducted on the victim. He claims prejudice in several respects. His counsel avers that he had no opportunity to find the custodian, interview her, or to determine what her testimony would be. He argues that had he known the state did not intend to call the doctor, he could have prepared by moving in limine to exclude the custodian's

testimony, or that he could have been better prepared to make his objection to her testimony at trial. Finally, he claims that had he known that the records would be introduced by a records custodian rather than a physician, he would have consulted and retained a physician and nurse to assist him in interpreting the records.

These objections fall short of a showing of denial of due process. First, Benson fails to show specific prejudice from his inability to interview the records custodian prior to trial. He claims no specific surprise from anything she testified to; the surprise is that *her* testimony rather than the doctor's was presented. Benson's counsel must have known that *someone* would sponsor the records, and he fails to show what specific information he would have elicited from the records custodian had he been presented with her witness statement prior to trial.

Second, Benson's counsel performed a thorough voir dire of the custodian pertaining to her qualification to sponsor the records. Appellant's App., Vol. 2 at 247-48. He *did* make an objection to use of a medical custodian rather than the examining physician to sponsor the records. That objection was overruled. His claim now appears to be that he would have been better prepared to object if he had known ahead of time that the records would not be sponsored by the examining physician. He fails to disclose what more he could have argued in

favor of excluding the medical records, however, either in a motion in limine or at trial.

Benson's counsel claims that the medical records were nearly unreadable,[1] and he was counting on the sponsoring physician's testimony to assist him in deciphering and interpreting them. Benson contends that the delay in getting his attorney the medical records, coupled with their illegibility and the unavailability of the physician sponsor, deprived him of a fair trial. This claim fails because Benson has not shown how the result at trial would have differed if the records had been more legible, delivered to him more timely, or accompanied by a witness statement showing that the records custodian rather than a physician would be sponsoring them at trial.

### 2. Benson's wife's testimony

Benson's wife, Brenda Benson, testified at trial that she had received the birthday card found at the crime scene from a car dealership where she made a purchase. Benson's counsel stated that had he been given a witness statement detailing Mrs. Benson's anticipated testimony, he could have prepared to show both that Mrs. Benson had not seen the card for some time, and that both the victim and the victim's mother had visited the home where the card was sent.

---

[1] We have reviewed the records, contained in Appellant's App., Vol. I at 211-16, and conclude that Benson is complaining about the legibility of the handwriting rather than the quality of the copies produced.

In light of the evidence in favor of Benson's guilt, which we detail below, this testimony does not show prejudice sufficient to undermine our confidence in the fairness of Benson's trial.

### 3. Tire tracks issue

The defense received a surprise at trial when a prosecution investigator, Mike Evans, testified that tire tracks at the crime scene matched the rear tires of Benson's vehicle. Benson's counsel knew that Evans had taken impressions of the tracks at the scene and ink rollings of Benson's front tires, and had excluded the *front* tires of Benson's vehicle based on the tracks. He was unaware, however, that Evans was prepared to testify that his visual inspection of the *rear* tires indicated that they matched tracks found at the scene.

Benson presented this claim on direct appeal to the Oklahoma Court of Criminal Appeals. The Court of Criminal Appeals concluded, given the record that it had, that Benson had failed to show prejudice because Benson's counsel "fully impeached the witness'[s] opinion that the tire tracks matched the tires on Petitioner's vehicle." Appellant's App., Vol. I at 152. The state court's conclusion is reasonable in light of the facts. Benson's counsel recovered from his surprise and subjected Evans to a withering cross-examination concerning his opinion that the tire tracks matched the rear tires of Benson's truck. *See id.* Vol. II at 269-74. Benson has failed to show prejudice sufficient to rise to the

level of fundamental unfairness from the lack of pre-trial discovery concerning Evans' tire track evidence.

### 4. Pubic hair issue

Medical personnel conducted a rape examination shortly after the attack. A combing from the victim's pubic area yielded a single hair. Appellant was excluded as the source of the hair. Prosecution investigator Judy Stanberry told appellant's attorney prior to trial that the victim had no pubic hair. Appellant's counsel was therefore prepared to argue that the pubic hair was neither his nor the victim's, and that it implicated a third party in the sexual assault. At trial, the defense was surprised when Ms. Stanberry testified that the victim did have some pubic hair.

Benson's counsel did not present his claim that he was surprised by evidence that the victim had pubic hair as part of his direct appeal. Instead, he presented it for the first time in his application for post-conviction relief. The Oklahoma Court of Criminal Appeals held that the claim was procedurally barred, because the issue of the adequacy of discovery had already been extensively litigated in Benson's direct appeal.

Benson argues that his appellate counsel's ineffectiveness provides cause for his procedural default. Even if this is so, he has failed to demonstrate prejudice sufficient to excuse his failure to raise the pubic hair issue on direct

-9-

appeal. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (requiring petitioner to demonstrate cause and prejudice to excuse procedural default). Benson contends that had he known prior to trial that the victim had pubic hair, he could have insisted that the unknown hair be tested to see if it could be excluded as belonging to the victim. This would have allowed him to argue more forcefully that a third party committed the sexual assault. He also argues that he could have used the state's failure to obtain control pubic hair to discredit the procedures used to collect physical evidence contained in the rape kit.

This argument ignores the substance of the evidence tying Benson to the crime. First, of course, there is the victim's testimony that it was Benson who raped and sodomized her. Second, there was physical evidence in the form of the birthday card and business card belonging to Benson's wife found at the well site. Although no semen was found on the tissues with which the victim wiped herself, discarded tissues were found at the scene with blood on them, consistent with her story. Moreover, more than one witness testified to seeing Benson with the victim on the day in question.

Benson subjected the state's witness to a powerful cross-examination concerning her failure to obtain a pubic hair sample for control purposes. Appellant's App., Vol. II at 288-90. He fails to show what more his counsel could have done to discredit the state's procedures had he known the victim had

pubic hair. Under these circumstances, the failure of the state to comply with its discovery obligations concerning the pubic hair evidence falls short of a showing of prejudice sufficient to excuse the procedural default.

B. Ineffective assistance of counsel

Benson also argues that his appellate counsel was constitutionally ineffective for failing to make an adequate appellate record and for failing to raise the pubic hair issue on direct appeal. A showing of constitutional ineffectiveness requires a petitioner to demonstrate both ineffective representation by his counsel and prejudice from the error. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For the reasons outlined above, Benson cannot show prejudice sufficient to meet the second requirement for a *Strickland* claim. Moreover, in view of the state court's recognition that *Allen* claims are subject to harmless error analysis, he fails to show that even if properly presented with a complete record, his *Allen* claim would have been a "dead-bang winner" under state law. *See, e.g., Moore v. Gibson*, 195 F.3d 1152, 1180 (10th Cir. 1999), *cert. denied*, 530 U.S. 1208 (2000).

II. Ineffectiveness for failing to obtain a continuance

Benson also argues that his counsel was ineffective in failing to attach the required affidavit to his request for a continuance, resulting in its denial by the trial court. Had he been granted a continuance, he argues, he could have obtained

the pre-trial discovery he was denied by the trial court. As we have shown, however, he fails to demonstrate that the lack of adequate discovery was cause for reversal under either a theory of ineffective assistance of counsel or a theory of denial of due process. Therefore, his attorney's allegedly ineffective assistance did not prejudice him for purposes of the *Strickland* test.

The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court

Michael R. Murphy
Circuit Judge